[No. 25025-6-I. Division One. September 8, 1992.]

*In the Matter of the Marriage of* BARBARA GLASS, *Respondent,* and ROBERT GLASS, *Appellant.*

---

*Robert Glass,* pro se.

*H. Michael Fields* and *Anderson & Fields,* for respondent.

KENNEDY, J. — Robert Glass appeals the trial court's order modifying his child support and spousal maintenance obligations, claiming that the court improperly deviated (upward) from the Washington State Child Support Schedule and that the court should have terminated or further greatly reduced his spousal maintenance obligation.[1] Barbara Glass cross-appeals, claiming that the trial court improperly modified the spousal maintenance award which was by its terms nonmodifiable; that the court erred by retroactively modifying the family support awards; and that the court erred by failing to award the full interest due on the overdue family support.[2]

Finding no error in the court's decision to deviate from the presumptive schedule amount, we affirm the prospective modification of child support. Finding that the court erred by retroactively reducing the total accrued family support and that the court erred by failing to award the full amount of the interest due on the family support arrearages, we reverse and remand for entry of a correct judgment. Finding that the trial court did not err by granting Robert 1 year's grace in the payment of spousal maintenance but that the schedule for the resumed payments needs to be adjusted to ensure that Barbara will be entitled

---

[1] Robert also generally challenges all of the trial court's findings of fact as being unsupported by substantial evidence. However, Robert does not specifically assign error to any of the findings and he argues error only as to finding 2. Findings of fact to which no error is assigned stand as verities on appeal. *In re Smith*, 46 Wn. App. 647, 653, 731 P.2d 1149, *review denied*, 108 Wn.2d 1006 (1987). A party abandons assignments of error to findings of fact if he or she fails to argue them in his or her brief. *Valley View Indus. Park v. Redmond*, 107 Wn.2d 621, 630, 733 P.2d 182 (1987). Because Barbara was able to respond to Robert's argument with respect to finding 2, we will exercise our equitable power to reach that issue. RAP 12.2. Robert's failure to argue his other general contentions of lack of substantial evidence prevents any meaningful review of those contentions. Accordingly, we will not reach them.

[2] Barbara initially also challenged the modification of child support but she abandoned that issue during oral argument for this appeal.

to receive the full amount of the nonmodifiable maintenance award within the period of time required by the initial decree, we affirm in part, reverse in part and remand for a recalculation of the payment schedule and for entry of a corrected judgment.

## FACTS

A decree of dissolution of marriage was entered dissolving the marriage of Robert and Barbara Glass on October 7, 1987. The decree required that Robert pay child support in the sum of $600 per month for each of the parties' three children, for a total of $1,800 per month; and that Robert pay spousal maintenance to Barbara by the following schedule: $1,125 per month for 19 months; $1,623 per month for the ensuing 18 months; and $625 per month for the ensuing 216 months. The decree provided that the spousal maintenance obligation would survive Barbara's remarriage and that "[s]aid maintenance obligation shall be non-modifiable by either party *in duration or amount,* except in the event of the premature death of [Barbara]."[3] (Italics ours.)

After entry of the decree, Robert met his court-ordered obligations to pay family support until June 1988, when he fell behind in both the child support and the spousal maintenance payments. In the meantime, Robert had remarried. In August 1988, Robert and his spouse Sherrie Clendenen jointly filed a petition in bankruptcy court.[4] Shortly thereafter, Barbara sought a contempt citation. Following a show cause hearing, Robert was found to be in contempt of court for failure to pay family support as required by the decree. An order fixing judgment of $6,200 in overdue family support was entered on October 7, 1988.

---

[3]Thus, the decree provided that, except in the event of Barbara's untimely death, Robert was to pay a total of $185,589 for spousal maintenance over a period of 253 months (21.08 years) following entry of the decree.

[4]Robert claims that the bankruptcy proceedings were filed because RSG & Associates, Inc. (RSG), his business, was doing poorly. Robert closed RSG in June 1988, with a loss of almost $600,000 for the year.

On November 23, 1988, Robert filed a petition seeking to modify the decree of dissolution, based on his changed financial circumstances. In an accompanying affidavit, Robert claimed his total gross income to be $2,000 per month, derived solely from his employment at Glass & Associates, Inc. This corporation was formed by Robert and his spouse Sherrie Clendenen in July 1988, after the closure of RSG.[5]

In her response to the petition for modification, Barbara claimed that her gross monthly income was $1,775. She also alleged that Robert's income was far greater than he had claimed and that his lifestyle greatly exceeded his claimed income.

During the extensive discovery which thereafter ensued, Robert produced an affidavit from his CPA, indicating that the CPA expected Glass & Associates, Inc., to experience a modest loss for tax year 1989 and that the company should show a profit in 1990. The CPA verified that Robert was facing over $75,000 in unpaid tax liability and that Glass & Associates, Inc., currently could afford to pay only a modest monthly salary to Robert and to his wife Sherrie.

Following a "trial by affidavit" hearing and argument, the court rendered its decision. The court's written findings, conclusions and an order of modification were entered on October 2, 1989.[6]

The trial court found that as of July 1989, the total amount of overdue child support and spousal maintenance was $32,640. The court found that each parent had monthly net earnings of approximately $1,300. The court ordered that, commencing in July 1989, Robert was to pay $500 in

---

[5]Robert claims that Glass & Associates, Inc., is owned entirely by Sherrie Clendenen. From the record it appears that Glass & Associates, Inc., was in a similar line of business to RSG. Appellant admits that Glass & Associates, Inc., made loans to RSG to enable RSG to pay some of its outstanding debts.

[6]Robert claims that he received no notice of presentation of the findings of fact, conclusions of law and the order. Although the record is unclear as to notice, we decline to address an issue raised for the first time on appeal.

child support for July and $1,000 per month thereafter for the remainder of the duration of the child support obligation as required by the initial decree, unless the award were sooner otherwise modified by order of the court.

With respect to spousal maintenance, the court granted Robert 1 year's grace, from July 1989 through June 1990, during which he would not be required to pay spousal maintenance. Commencing July 1, 1991, Robert was ordered to pay $1,000 per month for spousal maintenance for 1 year and $625 per month thereafter.

With respect to the aforementioned $32,640 in overdue family support, the court reduced that sum to $20,000, with no interest due until July 1990, and with interest due at the statutory rate thereafter. Barbara was enjoined from enforcing this judgment until July 1, 1990. The court also deferred Barbara's request to be awarded her attorney fees until July 1, 1990.

This appeal and cross appeal followed.

### DISCUSSION

1. Child Support.

██ We first address Robert's contention that the court erred by deviating upward from the presumptive support amount as determined by the child support schedule. In determining child support, a trial court is to utilize the Washington State Child Support Schedule, and must set forth written reasons supported by the evidence in order to deviate therefrom. RCW 26.19.035(1)(c), (2); RCW 26.19.075.[7] The failure to set forth adequate reasons for deviation is an abuse of discretion and subjects a decision to reversal. *See In re Marriage of Lee*, 57 Wn. App. 268, 277, 788 P.2d 564 (1990). Written reasons were provided in this case, which Robert

---

[7]At the time of the trial of this case, these same requirements were found at RCW 26.19.020(1) and (5). That section was repealed with the adoption of the current act, effective September 1, 1991. Although we decide this case based on the law in effect at the time of trial, our decision would be the same under the current act. For convenience, we will cite to the current act, referring to the former law only as necessary to clarify our decision and to reflect where the former law differs from the current act.

claims are not supported by substantial evidence. Accordingly, we have examined the written reasons and the record.

By way of summary of the trial court's findings, although each parent had net monthly earnings, as of the time of trial, of $1,300 per month, Robert historically had earned significantly more and he was capable of earning significantly more in the relatively near future. Robert's lifestyle was more commensurate with his previously demonstrated earning capability than with his earnings at the time of trial. Robert and his spouse Sherrie Clendenen jointly owned and operated Glass & Associates, Inc., and each derived an income therefrom. Robert enjoyed financial benefits from the operation of this business which were not reflected in his monthly earnings. Although Robert was in need of some temporary relief from a portion of his court-ordered family support obligations, he should, within 1 year of the trial, be able to significantly increase his earnings, either at Glass & Associates, Inc., or by means of alternative employment. We find substantial evidence in the record to support all of these findings.[8]

The trial court also based its decision to deviate upward from the presumptive schedule amount on its observation that to set the modified child support based only on Robert's then current net earnings would result in an unrealistically low level of support in view of the needs of the children and in view of the expense of additional litigation to increase support after Robert was given an opportunity to recover financially. There was evidence before the court from which it could reasonably conclude that, if given some temporary relief in the terms of his family support obligations, Robert could recover faster than otherwise might be the case. From the record and from the findings as a whole, it appears that Barbara and the children were struggling to make ends

---

[8]At oral argument for this appeal, Robert argued that the trial court's optimistic view of his financial future had not come to pass and that his financial position had grown worse instead of better. This is not the appropriate standard of review. We must base our decision on the evidence in the record which was available to the trial court at the time of trial.

meet, in view of Robert's failure to meet his court-ordered obligations for family support. Robert's lifestyle, on the other hand, remained relatively comfortable. Although this may reflect in part the assets which were acquired by Robert before his financial difficulties ensued, that Robert had been able to retain and maintain his own lifestyle may also indicate his own confidence in his ability to recover financially in the relatively near future, as opined by the trial court.

Although Robert has not directly challenged whether the trial court's findings, if supported by substantial evidence as we find them to be, can support the decision to deviate as a matter of law, because the monthly child support award exceeds 50 percent of Robert's net monthly earnings, we will exercise our equitable power to address this issue. *See* RAP 12.1; 12.2.

Under the child support schedule as in effect at the time of this trial,[9] a parent's child support obligation could not exceed 50 percent of his or her net disposable income unless good cause were shown. Good cause could include but was not limited to the possession of substantial wealth. Washington State Child Support Schedule Comm'n, *Washington State Child Support Schedule* Std. 9 (1988) (WSCSS/7-1-88). Reasons for deviation could include but were not limited to possession of wealth and shared living arrangements. Standard 12, WSCSS/7-1-88. The court was to consider all income and resources of each parent's household. Standard 16, WSCSS/7-1-88.

Under the current statute, effective September 1, 1991, a parent's child support obligation may not exceed 45 percent of his or her net disposable income except for good cause. Good cause may include but is not limited to possession of substantial wealth. RCW 26.19.065(1). The court may deviate from the presumptive schedule amount after considering such nonexclusive factors as the income of a new spouse (not in and of itself a sufficient reason to deviate but a

---

[9] *See* Washington State Child Support Schedule effective July 1, 1988.

factor to be considered where other reasons exist) and the possession of wealth, including business interests. RCW 26.19.075(1)(a)(i), (vi).

Although Robert's modified child support obligation exceeded 50 percent of his net monthly earnings at the time of trial, and although Robert's wealth would not be considered "substantial" to many people, nevertheless, the record and the court's findings contain good cause for the deviation here extant. Robert's net monthly earnings did not reflect the full benefit of his co-ownership interest in Glass & Associates, Inc. That business also generated an income for Robert's spouse Sherrie Clendenen and sufficient income to enable Robert to retire some of the debts of his previous company, RSG. Most importantly, Robert's financial setbacks, although serious, were reasonably expected to be temporary in nature, particularly if he were to be given some temporary relief from the full burden of his family support obligations.[10]

The trial court made a thoughtful and sincere effort to devise an economic plan which would provide Robert with some temporary relief without subjecting the children to undue economic hardship. Although we find error in some parts of the trial court's approach, we find no error, in view of the evidence in this case, in the trial court's decision to deviate upward from the presumptive schedule amount, notwithstanding that the child support awarded exceeded 50 percent of Robert's then current net monthly earnings. Robert's net monthly earnings represented only a portion of his economic resources and there was substantial evidence

---

[10]Although ordinarily it would not be appropriate for a trial court to reduce a parent's child support obligation merely so that he or she might more easily handle his or her business obligations, here Robert was facing predissolution tax liabilities which, if not paid, potentially could result in economic losses to Barbara. This in turn would adversely affect the children. Robert, at the time of trial, was paying only $800 per month into Barbara's household and Barbara and the children were already struggling to make ends meet. It was in the best interest of the children that Robert, and not Barbara, pay these tax obligations. The trial court properly took this into account.

that his income would probably increase in the relatively near future.

2. Finding 2.

Robert contends that finding of fact 2 is not supported by substantial evidence. Finding 2 states that Robert's former business, RSG, is now incorporated in Sherrie Clendenen's name and that Robert and Sherrie are still substantially employed in the same line of business as was conducted by RSG. Although the stock in Glass & Associates, Inc., was issued in the name of Sherrie Clendenen alone, and although the name of the new company was not RSG, property acquired during a marriage is presumably community property. The fact that the stock in Glass & Associates, Inc., is held solely in the name of Robert's wife Sherrie is not enough to rebut that presumption. Moreover, in unchallenged finding 7, which we must treat as a verity for purposes of this appeal, the court found that Robert and Sherrie jointly own and operate Glass & Associates, Inc. It really does not matter whether Glass & Associates, Inc., is the same company as RSG, or a successor company to RSG, or an entirely new enterprise. It was appropriate for the court to consider the income and other financial benefits which Robert enjoys by virtue of his co-ownership and comanagement of this business, in determining whether to deviate from the schedule in imposing Robert's child support obligation.[11]

3. Family Support Arrearages.

We agree with Barbara's contention that the trial court erred in reducing the overdue child support and spousal maintenance, totaling $32,640 at the time of trial, to a judgment of only $20,000. Neither child support nor spousal maintenance can be modified retroactively. RCW

---

[11]Even if the business were entirely the separate property of Sherrie Clendenen, as claimed by Robert, the record clearly reflects that both spouses derive an income therefrom and that the business generates sufficient additional income to enable it to loan or otherwise provide funds to enable Robert to pay some of the business obligations of RSG. These are financial resources which the court was entitled to consider. *See* RCW 26.19.075(1)(a)(i), (vi).

26.09.170(1); *In re Marriage of Olsen*, 24 Wn. App. 292, 295, 600 P.2d 690 (1979). Payments which have accrued before modification become a vested judgment. *Olsen*, 24 Wn. App. at 295. Although the court may elect to modify effective on the date a petition to modify is filed, and although less than $20,000 had accrued when the petition was filed by Robert, the trial court elected to modify child support as of July 1989, and not November 1988, when the petition was filed. Further, the "moratorium" on the collection of spousal maintenance was made effective in July 1989, and, although we have approved the granting of 1 year's grace with respect to those payments, the spousal maintenance award in this case was by its terms nonmodifiable in any event. See discussion, *infra*. Barbara was entitled to receive a judgment for the full amount of the overdue family support, $32,640 and not $20,000.

4. Failure To Award Full Amount of Interest Owed.

■ The trial court also erred by failing to award interest on the judgment for overdue family support for the period following trial and until July 1990, at the expiration of 1 year's grace granted to Robert. *See In re Marriage of Sanborn*, 55 Wn. App. 124, 129-30, 777 P.2d 4 (1989). In *Sanborn*, this court held that a court has no power to decline to award interest on a judgment for overdue maintenance. We now hold that a court has no power to decline to award the *full* amount of statutory interest due on a judgment for overdue child support and/or spousal maintenance.

5. Nonmodifiable Maintenance.

Robert contends that the trial court erred in failing to terminate or greatly reduce the spousal maintenance award, in view of his changed financial circumstances. In her cross appeal, Barbara contends that the trial court erred by modifying the nonmodifiable maintenance award. To the extent that the trial court may have intended to reduce Robert's total spousal maintenance obligation, rather than merely to adjust the payment schedule so as to provide Robert with some sorely needed temporary relief, Barbara is correct.

■ A separation contract which precludes or limits the court's power to modify an agreed maintenance award, once approved by the court and embodied into a decree, is to be enforced in accord with its terms. RCW 26.09.070(7). Except in cases where the contract was unfair at the time of its execution, such provisions are to be enforced by our courts. RCW 26.09.070(3); *In re Marriage of Yearout*, 41 Wn. App. 897, 901, 707 P.2d 1367 (1985).[12] Although Robert has not argued in this appeal that these parties' separation contract was unfair at the time it was executed, the time for such a challenge has expired in any event. Any such challenge must be made prior to the entry of the decree by which the separation contract is approved by the court. RCW 26.09-.070(3), (7).[13] If such a challenge were to be allowed years later, at the time of a modification proceeding, the provisions of RCW 26.09.070(3) and (7) would be rendered meaningless.

Even in the event of changed circumstances of either party a nonmodifiable spousal maintenance award is exactly that: it is nonmodifiable.[14]

■ This is not to say, however, that the court is entirely without power to grant any equitable relief whatsoever, in cases of extreme financial hardship, where such changed circumstances were not foreseen at the time of the initial

---

[12]Although not the case here, such provisions may be modified when child support and spousal maintenance are undifferentiated. *See In re Marriage of Studebaker*, 36 Wn. App. 815, 677 P.2d 789 (1984).

[13]Although we find no formal "separation contract" in the record for this appeal, the decree of dissolution of marriage, which was signed by both parties, as well as by their respective attorneys, was entered by agreement of the parties and the decree sometimes refers to itself as the parties' "property settlement agreement".

[14]Robert's reliance upon *In re Marriage of Washburn*, 101 Wn.2d 168, 677 P.2d 152 (1984), *Fleckenstein v. Fleckenstein*, 59 Wn.2d 131, 366 P.2d 688 (1961), and *Young v. Young*, 47 Wn.2d 497, 288 P.2d 463 (1955) is misplaced. These cases involve either an initial determination to set maintenance in the absence of an agreement by the parties or a modification of such an award in the absence of a nonmodifiable decree.

decree, and where, as here, equitable relief may be fashioned in such a manner *that the full award will be paid within the time contemplated by the initial decree.* The trial court's findings and modification order in this case are not drafted with absolute clarity. To the extent that the trial court may have intended to *reduce* the overall maintenance award, or to increase the duration of the award, such was error. To the extent that the court may have intended merely to grant a temporary moratorium on the collection of the monthly payments and to adjust the payment schedule thereafter, without reducing the full amount to be paid, and without increasing or decreasing the duration of the award, the court acted within its broad equitable powers.

██ Here, Robert was faced with financial setbacks that reduced his disposable income substantially and made it impossible for him to make the payments as they fell due. The court's findings reflect that it considered both parties' financial situations, the needs of Barbara and of the parties' children for continued support, the potential threat to Barbara of Robert's unpaid (predissolution) tax obligations, and the prediction of the CPA that Robert's income probably would be increasing in 1 year, as Glass & Associates, Inc., becomes a profitable business. The court was faced with the reality that one cannot "get blood from a turnip". The court properly weighed the equities, in view of the evidence before it, and properly granted Robert 1 year's grace before he must resume making spousal maintenance payments.[15]

Barbara is, of course, entitled to the full statutory interest on the payments falling due during the 1-year moratorium. The schedule of resumed payments at the end of the year's grace needs to be adjusted to take this into account. Moreover, the schedule of resumed payments needs to be further adjusted to ensure that Barbara will be entitled to receive the full sum of the $185,589 maintenance award during the

---

[15]The court's authority to enjoin Barbara from enforcing her judgment for overdue family support for a period of 1 year has not been briefed for this appeal and that issue is now moot, in any event. Accordingly, we do not address that issue.

21.08 years following the entry of the initial decree, all as provided by that decree.[16]

Although in one sense to adjust the payment schedule of a nonmodifiable maintenance award may be said to be a "modification", here the trial court expressly retained the provision of the initial decree that this maintenance award would survive Barbara's remarriage. This was entirely appropriate, and it would have been error to rule otherwise. While there is certainly a possibility that Barbara's untimely death might result in a loss to her estate of sums which might have been received if the initial schedule of payments had been retained, by requiring that the total award be paid within the same 21.08-year timeframe set by the initial decree, this risk is minimized. The initial decree provided that the spousal maintenance award was nonmodifiable "in duration or amount". So long as neither the duration nor the amount of maintenance was intended to be changed, we hold that the court did not err in adjusting the payment schedule, in view of the circumstances of this case. To the extent that the trial court may have intended to change the amount or the duration of the award, however, such was error. We remand for a recalculation of the payment schedule and for entry of a corrected judgment in accord with this decision, in that the schedule of resumed payments set by the trial court will not ensure that the full amount owed will in fact be paid within the necessary time limit.

6. Attorney Fees.

 Barbara asks this court to award her attorney fees for this appeal. RAP 18.9(a) permits this court to award attorney fees for a frivolous appeal. *Green River Comm'ty College Dist. 10 v. Higher Educ. Personnel Bd.*, 107 Wn.2d 427, 442-43, 730 P.2d 653 (1986). Robert's appeal is not frivolous. He has not prevailed on the issues he raised, but there were certainly debatable issues concerning the court's decision to deviate from the child support schedule. Barbara

---

[16]To the extent that additional tax planning may need to be done to avoid unnecessarily adverse tax consequences, especially to Barbara, by reason of these adjustments, this also needs to be taken into account.

also complains that Robert's brief cites cases which are not applicable to the legal issues he has raised. Although this is true, Barbara's brief contains similar errors. This court, unfortunately, too often receives briefs in which there are inadequate citations to the record and to the applicable law. Sanctions are sometimes appropriate, but in this case the briefing errors did not hamper our disposition of the appeal and cross appeal. We therefore decline to award sanctions.

## CONCLUSION

In conclusion, we affirm the trial court's prospective modification of child support and we affirm the trial court's grant of 1 year's grace in the payment of monthly spousal maintenance, which we do not treat as a "modification" in view of our ruling that there shall be no reduction in the total sum due nor in the number of years over which the total maintenance obligation must be paid. We reverse and remand for entry of a corrected judgment awarding Barbara $32,640, with the full statutory interest due thereon, for the arrearages in family support as of the time of trial. With respect to the payment of maintenance, we remand for entry of a corrected judgment, in that the schedule of payments from and after July 1, 1990 (after the expiration of 1 year's grace), must be adjusted to reflect the interest accrued during the period of grace and to ensure that all sums remaining due on the initial award will be paid during the 21.08 years following entry of the initial decree. To the extent that the initial maintenance award may have embodied tax planning which may need to be changed in view of the adjusted schedule of payments, such should be considered by the court.

We noted that the trial court deferred Barbara's request to be awarded attorney fees until July 1, 1990, at the end of the period of grace. To the extent that that issue has remained in abeyance during the pendency of this appeal, that issue may be considered following our remand.

GROSSE, C.J., and SCHOLFIELD, J., concur.