180 P.3d 199 (2008)
In re MARRIAGE OF Martin HULSCHER, Respondent, and
Janice Hulscher, Appellant.
No. 35157-9-II.
Court of Appeals of Washington, Division 2.
April 1, 2008.
*200 Fred Michael Misner, Attorney at Law, University Place, WA, for Appellant.
Diana Lynn Kiesel, Attorney at Law, Carol J. Cooper, Davies Pearson PC, Tacoma, WA, for Respondent.
BRIDGEWATER, J.
¶ 1 Janice Hulscher appeals from the trial court's order modifying her spousal support award, arguing the spousal support provision is nonmodifiable by its terms. When parties include a nonmodifiable spousal maintenance provision in a separation contract, generally our courts may not modify spousal maintenance unless the provision was unfair when entered. We hold that parties need not enter a separate written instrument constituting their separation contract, so long as the decree of dissolution embodies the agreed-to separation contract provisions. Accordingly, we hold that the trial court erred when it modified the Hulschers' nonmodifiable spousal maintenance provision embodied in their decree of dissolution. We reverse, vacate the modification order, and remand to reinstate past due spousal maintenance support.

FACTS
¶ 2 Janice and Martin Hulscher married in 1980.[1] During the course of their marriage, they had two children; Ryan was born in 1983 and Kevin was born in 1987. After Kevin was born, Janice stopped working as a pharmacy assistant to focus on raising the children. Martin worked as a longshoreman throughout the entire marriage. In 2001, his taxable income was $145,510.00. After 21 years of marriage, Janice and Martin separated in 2001.
¶ 3 They amicably agreed that Martin would continue to pay for Kevin to attend Bellarmine Preparatory School and participate in competitive sports. They also agreed that Martin would continue to pay for Ryan's college education at the University of Puget Sound. In addition, Martin paid for health insurance for Janice, Kevin, and Ryan. In order to meet his financial obligations to Janice and his children, Martin consistently worked approximately 100 hours per week during 2002, 2003, and 2004. As a result, his taxable income increased considerably.
¶ 4 On May 28, 2003, Martin and Janice signed agreed findings of fact and conclusions of law pertaining to their proposed dissolution. With regard to spousal maintenance, finding 2.7 stated:
There is no written separation contract or prenuptial agreement. The parties have reached an agreement on the terms of the settlement of this marriage dissolution action. The final pleadings signed by the parties constitute that agreement and the parties have asked that the Court adopt their agreement.
CP at 12. In addition, conclusion of law 3.6.1 stated:
The parties have agreed to this decree of dissolution and to the related findings of fact and conclusions of law . . . as part of an agreement to resolve the marriage dissolution, and these final pleadings create a contract between the parties. Rather than obtaining temporary court orders, the parties have agreed that their agreement shall be effective as of the dates set forth in the pleadings and that they have thus agreed to temporary child support, spousal maintenance and debt and property issues.
CP at 15. Janice and Martin filed these findings of fact and conclusions of law with their decree of dissolution on February 23, 2004. The parties followed the terms relating to payment of spousal maintenance for some nine months after signing the findings and conclusions related to the decree but before entering the decree. The decree of dissolution included a spousal maintenance provision whereby Martin was to pay $1,100.00 per week, totaling $4,766.67 per *201 month, minus the child support payment.[2] The spousal maintenance provision also stated:
The spousal maintenance shall terminate upon the death of either spouse. The spousal maintenance shall terminate upon the remarriage of [Janice]. Otherwise, the spousal maintenance is not modifiable.

CP at 31 (emphasis added). Thus, the decree of dissolution expressly stated that the parties' agreed to the decree and related findings of fact and conclusions of law "as part of an agreement to resolve the marriage dissolution, and these final pleadings create a contract between the parties." CP at 32.
¶ 5 Martin met his obligations under the decree of dissolution for the next year. But on February 16, 2005, he moved to vacate or modify that portion of the decree pertaining to nonmodifiable spousal maintenance. He also petitioned to modify his child support obligations because by that time, Kevin was residing with Martin rather than with Janice. On July 26, 2005, the commissioner denied Martin's motion to vacate the decree, but he agreed to reopen the spousal maintenance issue. The commissioner indicated it would be helpful for Janice to undergo an occupational evaluation to determine her earning potential and requested income documentation for Martin and his new wife.[3] The court reserved ruling on the child support issue and did not enter any orders following the hearing.
¶ 6 Additional hearings were held on April 14, 2006, and May 8, 2006. During the May 8 hearing, the commissioner articulated his belief that In re Marriage of Short, 125 Wash.2d 865, 890 P.2d 12 (1995), and RCW 26.09.070(7) were instructive as to the spousal maintenance issue. He denied Martin's motion to vacate spousal maintenance, but he granted his motion to modify, requiring Martin to pay spousal maintenance at the existing level for another four years, at 75 percent of the existing level for the next two years, and at 50 percent of the existing level for the following two years. As a part of the ruling, the commissioner concluded that (1) four years was a reasonable and adequate time for Janice to obtain a college degree or its equivalent; (2) it is not reasonable given Martin's age and line of work to require him to continue to work at the level that he has worked in the past; and (3) it is reasonable to assume that Martin's income stream will begin to decrease given the amount of overtime he has worked and his physical ability to work.
¶ 7 Janice moved for revision of the findings of fact and conclusions of law to the extent they stated that the decree did not constitute a separation agreement and that spousal maintenance was not permanent. Martin also moved for revision. The trial court affirmed the commissioner's ruling. Specifically, the trial court found there was no separation contract under Short and RCW 26.09.070; thus, modification of spousal maintenance was the proper remedy. In the alternative, the trial court found there was evidence that the parties intended for the spousal maintenance to be modifiable. Finally, the trial court revised the commissioner's ruling in terms of the specific amount and duration of spousal maintenance due to Janice. It awarded Janice $1,500.00 per month for 24 months beginning May 1, 2006, and required Martin to continue to provide medical insurance for Janice during the same period or until she obtained insurance through subsequent employment.

ANALYSIS
¶ 8 Janice's primary contention is that the trial court erred when it modified Martin's agreement to pay nonmodifiable lifetime spousal maintenance as set forth in their decree of dissolution. Martin responds that the spousal maintenance provision was unfair when the trial court approved and entered it. Janice is correct.[4]
*202 ¶ 9 We review a modification order to determine whether substantial evidence supports the trial court's findings and whether the court made an error of law that may be corrected on appeal. In re Marriage of Stern, 68 Wash.App. 922, 928-29, 846 P.2d 1387 (1993); see also State ex rel. M.M.G. v. Graham, 159 Wash.2d 623, 632-33, 152 P.3d 1005 (2007); In re Marriage of Spreen, 107 Wash.App. 341, 346, 28 P.3d 769 (2001). Substantial evidence supports a factual determination if the record contains sufficient evidence to persuade a fair-minded, rational person of the truth of that determination. Bering v. SHARE, 106 Wash.2d 212, 220, 721 P.2d 918 (1986), cert. dismissed, 479 U.S. 1050, 107 S.Ct. 940, 93 L.Ed.2d 990 (1987).
¶ 10 RCW 26.09.170(1) provides that, except as otherwise allowed by RCW 26.09.070(7), a maintenance award shall be modifiable, but only as to installments accruing subsequent to the petition for modification and only upon a showing of a substantial change of circumstances. RCW 26.09.070(7) provides in pertinent part: "When the separation contract so provides, the decree may expressly preclude or limit modification of any provision for maintenance set forth in the decree." Under this provision, a nonmodifiable maintenance award is permissible if such a provision was included in a separation contract the parties entered. Short, 125 Wash.2d at 876, 890 P.2d 12.
¶ 11 We look to Short to begin our analysis. There, the trial court entered a nonmodifiable maintenance award in the absence of any agreement between the parties. In re Marriage of Short, 71 Wash.App. 426, 442, 859 P.2d 636 (1993), rev'd on other grounds, 125 Wash.2d 865, 890 P.2d 12 (1995). Division One of this court reversed, holding that a trial court may not enter a nonmodifiable maintenance award provision sua sponte, absent an express agreement by the parties. Short, 71 Wash.App. at 443, 859 P.2d 636. The Washington State Supreme Court affirmed Division One's analysis on this issue, finding that because the parties did not enter into a separation contract, the trial court had no authority to include a nonmodifiable maintenance award provision in the decree of dissolution. Short, 125 Wash.2d at 876, 890 P.2d 12. Thus, Short is inapposite; it addressed the trial court's actions and not the parties' actions. There is no language in Short that permits a trial court to order modification of parties' nonmodifiable separation agreement. Rather, Short stands for the proposition that a trial court may not sua sponte enter nonmodifiable maintenance provisions, absent an express agreement by the parties. Short, 125 Wash.2d at 876, 890 P.2d 12; Short, 71 Wash. App. at 443-44, 859 P.2d 636.
¶ 12 Nor does Short stand for the proposition that the parties' separation agreement must be a separate document from the decree of dissolution. See Short, 125 Wash.2d at 875-76, 890 P.2d 12; Short, 71 Wash.App. at 442-44, 859 P.2d 636. This proposition is further supported by Division One's decision in In re Marriage of Glass, 67 Wash.App. 378, 835 P.2d 1054 (1992).
¶ 13 In In re Marriage of Glass, there was no formal separation contract in the record. Glass, 67 Wash.App. at 390 n. 13, 835 P.2d 1054. But there was a decree of dissolution, signed by both parties and their attorneys, which the parties entered into by agreement. Glass, 67 Wash.App. at 390 n. 13, 835 P.2d 1054. The decree even referred to itself in some places as the "property settlement agreement." Glass, 67 Wash.App. at 390 n. 13, 835 P.2d 1054. Division One found a separation contract was "embodied into a decree" and, thus, it was required to enforce the separation contract as proscribed by RCW 26.09.070(7). Glass, 67 Wash.App. at 390, 835 P.2d 1054. Division One refused to modify the spousal maintenance because under the separation contract embodied in the decree, it was nonmodifiable. Glass, 67 Wash.App. at 390, 835 P.2d 1054; see also 19 Kenneth W. Weber, Washington Practice: Family and Community Property Law, § 19.8 n. 3 at 408-09 (1997) (stating that "[i]f the decree has been signed by both parties as a stipulated instrument, it may be considered *203 to also constitute a separation contract.").
¶ 14 Again, Division One's decision in Glass is consistent with the Supreme Court's decision in Short. The Glass court refused to modify the nonmodifiable spousal maintenance agreement embodied in the decree of dissolution because the parties expressly agreed to the provision. Glass, 67 Wash. App. at 390, 835 P.2d 1054. Whereas in Short, Division One and the Washington Supreme Court refused to uphold the nonmodifiable spousal maintenance provision at issue because the trial court imposed it sua sponte, without agreement from the parties. Short, 125 Wash.2d at 876, 890 P.2d 12.
¶ 15 Here, similar to the facts of Glass, the parties extensively negotiated the terms of the decree, including maintenance. The findings of fact and conclusions of law specifically state they were based on agreement of the parties, the decree is based on the agreed findings and conclusions, and "these final pleadings create a contract between the parties." CP at 15. In addition, finding 2.7 stated:
There is no written separation contract or prenuptial agreement. The parties have reached an agreement on the terms of the settlement of this marriage dissolution action. The final pleadings signed by the parties constitute that agreement and the parties have asked that the Court adopt their agreement.

CP at 12 (emphasis added). And, the decree itself stated that the parties agreed to the decree and related findings of fact and conclusions of law. Both Janice and her lawyer, and Martin, acting pro se, signed the stipulated agreement. Under Glass, this is enough to establish that Janice and Martin's decree of dissolution embodies a separation contract. We note that the parties relied on and performed according to the agreement terms, i.e., Martin paid the amount due under the agreement, for some nine months before the court entered the decree. And because the separation contract included an agreed, nonmodifiable spousal maintenance provision that the trial court approved and embodied in the decree, our courts have no authority to modify it. RCW 26.09.070(7); Glass, 67 Wash.App. at 390, 835 P.2d 1054; 19 Kenneth W. Weber, § 19.8, at 419 (stating that "[i]f the contract precludes the modification of maintenance absent mutual consent, then the court lacks jurisdiction to modify the contract if it was fair at the time of execution."). Thus, the trial court erred when it modified Janice and Martin's nonmodifiable spousal maintenance provision.
¶ 16 Moreover, Martin's response that the nonmodifiable spousal maintenance provision was unfair at the time of execution fails. Although he raised this argument below, the lower court expressly refused to determine whether the spousal maintenance provision was unfair. The trial court made no findings of fact or conclusions of law showing that the agreement was unfair when executed. Nor did the commissioner make any findings pertaining to the fairness of the parties' agreement. On this record, we cannot determine whether the nonmodifiable maintenance agreement was unfair at execution. See In re Marriage of Yearout, 41 Wash.App. 897, 901, 707 P.2d 1367 (1985).
¶ 17 Nevertheless, even if the record permitted us to determine whether the nonmodifiable spousal maintenance agreement was unfair at execution, the argument still fails. Martin did not claim that the spousal maintenance provision was unfair until nearly a year after the trial court approved and entered the decree. But a party must make such a challenge before the trial court's approval and entry of the decree. RCW 26.09.070(3), (7); Glass, 67 Wash.App. at 390, 835 P.2d 1054. As the Glass court astutely observed, "[i]f such a challenge were to be allowed years later, at the time of a modification proceeding, the provisions of RCW 26.09.070(3) and (7) would be rendered meaningless." Glass, 67 Wash.App. at 390, 835 P.2d 1054. Consequently, Martin's claim that the spousal maintenance provision was unfair at the time of execution is thus time-barred.
¶ 18 Accordingly, we hold that the trial court erred when it modified the Hulschers' *204 nonmodifiable spousal maintenance provision embodied in their decree of dissolution. We vacate the trial court's order modifying spousal maintenance and remand to reinstate past due spousal maintenance consistent with the nonmodifiable spousal maintenance provision.
¶ 19 Reversed, vacated and remanded to enter orders consistent with this opinion.
We concur: VAN DEREN, A.C.J., and PENOYAR, J.
NOTES
[1] We refer to Janice and Martin by their first names for clarity. We mean no disrespect.
[2] The court originally calculated the child support payment to be $2,587.21 per month.
[3] Martin married Holly Hulscher on June 27, 2004. Holly is also a longshoreman.
[4] Janice alternatively argues that Martin failed to establish a substantial change in circumstances warranting modification of spousal maintenance. Martin alternatively argues that he and Janice intended for the spousal maintenance to be modifiable. Resolving that the Hulschers' spousal maintenance provision was nonmodifiable, we do not address these alternative arguments.