IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | |
|---|---|
| In re the Marriage of: | ) |
| | ) No. 31835-4-III |
| BARRY CRAIG EGGERT, | ) |
| | ) |
| Appellant, | ) |
| | ) |
| and | ) UNPUBLISHED OPINION |
| | ) |
| KRISTY KAY EGGERT, | ) |
| | ) |
| Respondent. | ) |

SIDDOWAY, C.J. — Barry Eggert petitioned the superior court to modify his

spousal maintenance obligation to his ex-wife, Kristy Eggert. His petition was denied by

a court commissioner and, after he moved for revision, the denial was affirmed by a

superior court judge.

He argues on appeal that the superior court erroneously viewed the spousal

maintenance to which he agreed at the time of dissolution as nonmodifiable. We do not

construe that as the basis for the court's decision, however. Instead, the court recognized

that it was too late for Mr. Eggert to challenge the decree as unfair or as allegedly not

representing the parties' understanding. Accordingly, while he can move to modify its

provision for spousal maintenance, the issue of whether there has been a substantial

change of circumstances is measured with respect to the decree. The superior court agreed with the court commissioner's analysis that Mr. Eggert did not show a substantial change of circumstances.

Having concluded that the trial court did not abuse its discretion, we affirm. We deny Ms. Eggert's request for attorney fees.

## FACTS AND PROCEDURAL BACKGROUND

Barry and Kristy Eggert were married in June 1980 and separated in June 2005. A decree of dissolution was entered by a court commissioner only two months later, in August 2005, based on findings of fact and conclusions of law that were mutually agreed by the parties. At the time the decree was entered, Mr. Eggert was not represented by a lawyer; Ms. Eggert was.

Addressing spousal maintenance, the decree provided:

> The husband shall pay $1000.00 maintenance per month for the first year after the Decree of Dissolution is filed. After one year, maintenance shall increase to $1,500.00 per month. Maintenance shall be paid semi-monthly. The first maintenance payment shall be due on September 1, 2005 or the first month after the last mortgage payment is made.
>
> > The obligation to pay future maintenance is terminated upon the death of either party or the remarriage of the party receiving maintenance unless otherwise specified below:
>
> Payments shall be made directly to the other spouse.

Clerk's Papers (CP) at 10. No other triggers terminating spousal maintenance were identified. The findings, conclusions, and decree were signed by both parties, by Ms.

2

Eggert's lawyer, and by the court commissioner.

Mr. Eggert made the required payments to his ex-wife for seven years, until September 2012, when, having engaged a lawyer, he filed a petition for support modification. He identified the bases for modification as follows:

> The previous order was entered more than five years ago. The Respondent has since had the opportunity to obtain employment and has in fact turned down employment opportunities. She has also received some income. Furthermore, the current order does not specify the termination date, and as such, the order needs to be clarified. Furthermore, the order works a severe economic hardship on me as I am unable to afford to continue to pay said maintenance obligation. The changes in circumstances require a modification of the maintenance obligation.

CP at 17.

His declaration in support of modification included additional facts and reasoning suggesting that the original decree failed to reflect his and Ms. Eggert's entire understanding and that it was unfair. He testified that at the time the parties divorced he was unrepresented, and that his agreement to pay spousal maintenance was based on the understanding that Ms. Eggert would get a job soon, and that when she did, his obligation would be reduced or terminated altogether.

As to changed circumstances, his declaration stated that he had recently been diagnosed with rheumatoid arthritis and was placed on medication that had caused him to lose a considerable amount of his vision, leading him to believe that the end of his working career was fast approaching. He also disclosed that while he continued to have a

3

well paying job, he had a negative net worth, could not meet his monthly expenses, and had incurred significant credit card debt as a result.

Ms. Eggert's declaration in opposition to the petition stated that at the time of the parties' separation her father had a heart condition, her mother was disabled with Parkinson's disease and had recently had back surgery, and Ms. Eggert had resigned her longtime position with a school district to care for her parents with Mr. Eggert's encouragement and agreement. She reported that in the February following her and Mr. Eggert's divorce, her father accidentally shot and killed her mother, leading to a long process of proving his innocence. She testified that while she had sought employment, she had been under too much mental stress to be successful. Her only income had been from cleaning friends' homes.

Current financial information before the commissioner at the time the petition was heard included Mr. Eggert's monthly after-tax, after-payroll deduction and after spousal maintenance-payment income of $5,037.95, which he was applying to even higher claimed living expenses that included substantial debt. Ms. Eggert's financial statement reported receipt of only the $1,500.00 a month spousal maintenance income, but Mr. Eggert argued that she had admitted receiving as much as $563.00 a month ($6,760.00 a year) from cleaning homes when she was deposed.

The commissioner denied the petition for modification. In orally ruling, the commissioner found no substantial change in circumstances: he found that Mr. Eggert

4

had not lost his eyesight to a degree that prevented him from working and Ms. Eggert was not employed in circumstances substantially different from those existing at the time the decree was entered.

Mr. Eggert moved the superior court for revision, providing the court with a verbatim transcript of the commissioner's oral ruling. The superior court denied the motion to revise, while acknowledging that a perpetual support obligation was highly unusual. In orally ruling, the court suggested that Mr. Eggert might well be saddled with an obligation more onerous than he would have been had he been represented by a lawyer at the time of the decree. The court nonetheless observed that "it's not fraud," that Mr. Eggert "could have [but did not bring] a CR 60 motion to vacate," and "didn't attempt in any fashion to take the matter up to the appellate court." Report of Proceedings (RP) at 6. He characterized Mr. Eggert as, in essence, "attempting . . . to retroactively modify the decree." *Id.* at 10. Concluding that "the Commissioner's analysis, I'm satisfied, was completely appropriate [so] [t]here's no reason to revise," he denied the motion to revise. *Id.* at 11. Mr. Eggert appeals.

## ANALYSIS

Mr. Eggert assigns error to each oral ruling and written order entered below by both the commissioner and the superior court. Once the superior court makes a decision on revision, however, the appeal is from the superior court's decision, not the commissioner's. *State v. Hoffman*, 115 Wn. App. 91, 101, 60 P.3d 1261, *rev'd on other*

*grounds*, 150 Wn.2d 536, 78 P.3d 1289 (2003). Accordingly, we review the superior court's decision although in this case, as discussed hereafter, the court adopted the analysis of the court commissioner in denying the motion for revision.

The standard for modifying a spousal maintenance award is provided by RCW 26.09.170(1), which allows the trial court to "modify a maintenance award when the moving party shows a substantial change in circumstances that the parties did not contemplate at the time of the dissolution decree." *In re Marriage of Spreen*, 107 Wn. App. 341, 346, 28 P.3d 769 (2001). We review a modification order for abuse of discretion. *In re Marriage of Drlik*, 121 Wn. App. 269, 274, 87 P.3d 1192 (2004). In determining whether the trial court abused its discretion, we review the order "'for substantial supporting evidence and for legal error.'" *Id.* (quoting *Spreen*, 107 Wn. App. at 346).

Mr. Eggert raises what amounts to only one issue on review, although he frames it as two. He argues, first, that the trial court erred in treating the Eggerts' decree as a nonmodifiable agreement to spousal maintenance and, second, that we should remand so that the court can consider whether there has been a substantial change of circumstances. We reject his premise. The superior court's decision ultimately turned on Mr. Eggert's failure to demonstrate a substantial change of circumstances. If this was not entirely clear, it is because Mr. Eggert's petition and Ms. Eggert's response raised three issues that the parties, the commissioner, and the court sometimes addressed in an overlapping

6

manner: (1) the modifiable or nonmodifiable character of the original maintenance award, (2) whether Mr. Eggert was attempting to retroactively modify the 2005 decree, and (3) the core issue of whether substantially changed circumstances warranted a modification of the maintenance award.

The first issue presented was whether the maintenance award was even subject to modification, an issue raised when Ms. Eggert responded to the petition by alleging that "it was agreed that maintenance would not terminate with the exception of upon death or remarriage of the respondent. The parties had a long-term marriage. The wife gave up her career for the marriage and is a displaced homemaker." CP at 40. Mr. Eggert contends that the spousal maintenance provision set forth in the parties' decree is subject to modification by the superior court. We agree with Mr. Eggert.

RCW 26.09.170(1) provides that, except as otherwise allowed by RCW 26.09.070(7), a maintenance award shall be prospectively modifiable upon a showing of substantial change of circumstances. The exception created by RCW 26.09.070(7) is for separation contracts under which the parties agree that "the decree may expressly preclude or limit modification of any provision for maintenance set forth in the decree." The parties' written agreement that maintenance is not modifiable need not be denominated a "separation contract," and can be reflected in the decree itself. But it must provide that the maintenance provision is nonmodifiable. *See, e.g., In re Marriage of Glass*, 67 Wn. App. 378, 382, 390 n.13, 835 P.2d 1054 (1992) (decree, signed by both

7

parties and their lawyers, provided that the maintenance obligation "'shall be non-modifiable by either party *in duration or amount*, except in the event of the premature death of [the wife]'"); *In re Marriage of Hulscher*, 143 Wn. App. 708, 711, 180 P.3d 199 (2008) (decree, which described itself as the parties' agreement and was signed by both, provided that spousal maintenance would terminate upon the death of either spouse or remarriage of the wife and, "'*Otherwise, the spousal maintenance is not modifiable.*'").

In this case, the decree provided for an award of permanent maintenance (subject to remarriage or death) but includes no language stating that the award is nonmodifiable. As a result, Mr. Eggert may petition the superior court for modification under RCW 26.09.170(1). The court commissioner recognized this, observing that because there was "nothing that limits modification[,] I should say[,] or defines when modification should be had then we look to the statute" and the statutory standard of "substantial change of circumstances." CP at 251. The superior court concluded that the commissioner's analysis was appropriate and found no reason to revise.

The second issue raised below was whether Mr. Eggert's arguments about his pro se status at the time of the decree, the disfavored character of permanent spousal maintenance, and a claimed understanding that Ms. Eggert would get a job at which point spousal maintenance would end, were attempts to retroactively modify the 2005 decree. We agree with the superior court that they were a belated challenge to the decree and irrelevant to the statutory standard of substantially changed circumstances. Mr. Eggert's

8

opportunity to challenge those matters was years ago; it was too late by the time he petitioned the court for modification. Pro se litigants are held to the same standards as an attorney. *Kelsey v. Kelsey*, 179 Wn. App. 360, 368, 317 P.3d 1096, *review denied*, No. 90006-0 (Wash. June 4, 2014).

The superior court's discussion in its oral ruling of why it was too late for Mr. Eggert to raise these challenges to the original decree was lengthy. Mr. Eggert sought to interject those irrelevant matters into the superior court's consideration of his petition and the court properly took time to explain why it would not. The discussion of those issues appears to contribute to Mr. Eggert's confusion about the basis for the trial court's decision.

Finally, the third issue—the core, relevant issue presented by the petition—was whether the parties' circumstances had substantially changed from those existing at the time of the decree, thereby warranting a modification of the maintenance award. The relevant evidence and argument presented by Mr. Eggert on the issue of substantial change of circumstances was addressed to his health and to his and Ms. Eggert's respective financial circumstances.

The court commissioner clearly considered whether a substantial change of circumstances had occurred; as he explained in his oral ruling:

> The substantial change in circumstances that the petitioner in the case
> wants the court to focus on is the employment status or lack of employment
> status on the part of the respondent. [N]o pun intended, there is a

9

substantial difference between a change in circumstances and a substantial change in circumstances. The court could certainly understand that if for example the petitioner here in fact was unemployed or had in fact lost his eyesight, which prevented him from working or something such as this. In addition to that, if the respondent was not just employed, but if the respondent was substantially employed substantially in a substantially different circumstance than what she was at the time that the decree was entered.

. . . .

. . . It does not appear that there is a substantial change in circumstances. Not at this time.

CP at 252-53.

During the hearing on the motion for revision, the superior court announced that it had reviewed the revision file including the transcript of the commissioner's ruling. The superior court's oral ruling revealed a thorough familiarity with the file. It spoke at length about the fact that Mr. Eggert's real complaint appeared to be about the terms of the decree to which he had agreed without the benefit of counsel and how it was too late to attack those terms. It also speculated about the issue of modifiability, stating that it was "not necessarily sure" or "not necessarily convinced" about the modifiability of the termination triggers in the decree and that "it would seem" the obligation would continue in perpetuity. RP at 9. On that score it was mistaken, but it only pointed out its uncertainty on that score; it did not deny the revision motion on that basis. Instead, having agreed that there was an inadequate showing of change of circumstances, it concluded that "the Commissioner's analysis, I'm satisfied, was completely appropriate";

10

that there was "no reason to revise"; and that it would leave the commissioner's order "in full force and effect." RP at 11.

Mr. Eggert has not demonstrated that the superior court abused its discretion in agreeing with the commissioner that an insufficient change in circumstances had been shown to justify modification.

### *Attorney Fees*

Ms. Eggert requests costs and reasonable attorney fees on appeal pursuant to RAP 18.1(a) and RCW 26.09.140. We may exercise discretion to award attorney fees on appeal after considering the financial need of the requesting party, the other party's ability to pay, and the arguable merits of the issues raised on appeal. *In re Marriage of Pennamen*, 135 Wn. App. 790, 807-08, 146 P.3d 466 (2006).

Both parties filed timely financial declarations. While Mr. Eggert's income is some three times' Ms. Eggert's income, his financial statement also reflects substantial debt, including student loans. His petition and appeal were not without merit. We decline to award attorney fees or costs.

Affirmed.

A majority of the panel has determined that this opinion will not be printed in the

11

No. 31835-4-III
*In re Marriage of Eggert*

Washington Appellate Reports but it will be filed for public record pursuant to RCW

2.06.040.

_____
Siddoway, C.J.

WE CONCUR:

_____
Brown, J.

_____
Lawrence-Berrey, J.

12