
IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| In the Matter of the Marriage of | ) | |
| | ) | No. 37230-8-III |
| JEANETTE E. SIRIANNI, | ) | |
| | ) | |
| Appellant, | ) | |
| | ) | |
| and | ) | UNPUBLISHED OPINION |
| | ) | |
| WARREN S. SIRIANNI, | ) | |
| | ) | |
| Respondent. | ) | |

KORSMO, J.P.T.[1] — Jeanette Sirianni appeals the trial court's order establishing a

parenting plan with 50-50 residential time and deviating from the standard child support

schedule. She also appeals repeated denials of her requests for a protection order.

Because substantial evidence supports the parenting plan and the trial court acted within

its discretion in denying a protection order, this court will not disturb these rulings.

---

[1] Judge Kevin M. Korsmo was a member of the Court of Appeals at the time argument was held on this matter. He is now serving as a judge pro tempore of the court pursuant to RCW 2.06.150.

No. 37230-8-III
*In re Marriage of Sirianni*


                                         FACTS

Jeanette sought to dissolve her seven year marriage to Warren Sirianni[2] in August, 2018. They have two elementary school-aged children. Warren, a retired Marine Corp veteran, works for the City of Spokane full time. Jeanette spent the first few years of the marriage mostly as a stay-at-home parent but took on increasing business responsibility raising animals on the family property and as a caregiver outside the home. She also began taking classes for a teaching degree.

Jeanette initially retained attorney Gina Costello, but retained attorney Craig Mason about a month after filing. Though she did not allege any abuse in her initial filing, she sought a protection order in September 2018, alleging that Warren was "threatening" her. After a hearing, the court commissioner declined to issue a protection order. The eventual trial judge upheld the denial on revision, but reserved the issue of a permanent protection order for trial.

At the July 2019 trial, both parties, along with friends and family, testified about the quality and style of each party's parenting. Jeanette's friends and mother testified that she was a good parent and that Warren was standoffish and domineering. Warren and his family testified that he was a loving and involved father and that Jeanette was

---

  [2] For convenience, we will sometimes refer to the parties by first name or as husband or wife.

                                           2

sometimes emotionally absent. Two family friends testified that both were good parents, though Warren had a strict military demeanor.

There was also testimony about two incidents involving Warren and firearms. Warren denied one ever occurred and explained that in the other incident he merely escorted an unexpected trespasser away from the family while carrying a rifle.

Jeanette also testified to at least one instance of physical abuse. During Jeanette's testimony the judge stopped her from providing hearsay testimony and warned her about a potential waiver of attorney-client privilege if she continued. After the warning she declined to offer further testimony about discussions with attorney Costello.

The court issued an oral ruling ordering finding no limitations on either parent and directing shared decision-making and 50-50 residential time. The court ordered child support be paid to Jeannette, but that a deviation from the standard child support schedule would be made. The court also required that any third-party childcare would be with a licensed provider. No domestic abuse was found, and no protection order issued.

Before entry of the final orders, the court denied post-trial motions to reopen the record after additional allegations of abuse that allegedly occurred after trial but before the oral ruling. In January 2020, Jeanette again requested a protection order after alleging another incident of abusive behavior which Warren denied. This was once more denied by the court commissioner.

ANALYSIS

Jeanette argues that (1) the parenting plan is not supported by substantial evidence, (2) the court abused its discretion in deviating from the standard child support schedule, and (3) the court erroneously excluded testimony that would have supported a protection order and that a protection order should have issued. Warren requests attorney fees.

*Parenting Plan*

Trial courts have broad discretion when dealing with child welfare, and their decisions will stand absent an abuse of discretion. *In re Marriage of McDole*, 122 Wn.2d 604, 610, 859 P.2d 1239 (1993). Abuse of discretion occurs when the court applies the law incorrectly or relies on findings unsupported by evidence. *Gildon v. Simon Prop. Grp., Inc.*, 158 Wn.2d 483, 494, 145 P.3d 1196 (2006). Findings of fact are upheld if supported by substantial evidence. *Merriman v. Cokeley*, 168 Wn.2d 627, 631, 230 P.3d 162 (2010). Substantial evidence is that quantum of evidence "sufficient to persuade a fair-minded, rational person of the declared premise." *Id*. The presence of contradictory evidence in the record does not mean a fact is not supported by substantial evidence. *In re Marriage of Burrill*, 113 Wn. App. 863, 868, 56 P.3d 993 (2002). When it comes to matters of credibility and weight of the evidence—particularly "in proceedings affecting the parent and child relationship"—appellate courts defer to the trier of fact. *In re A.W.*, 182 Wn.2d 689, 711, 344 P.3d 1186 (2015).

In dissolution proceedings, Washington courts are to allocate parental responsibilities according to the best interest of the child. RCW 26.09.002. A child's best interest is ordinarily served by altering the existing pattern of interaction between parent and child "only to the extent necessitated by the changed relationship." *Id*. Additionally, when fashioning the residential provisions of a parenting plan, courts are to "encourage each parent to maintain a loving, stable, and nurturing relationship with the child." RCW 26.09.187(3)(a). Seven factors are set out for the court to consider, including the nature of a child's relationship with each parent, each parent's past and potential for future performance of parenting functions, and each parent's employment schedule. *Id*. The greatest weight is put on "the relative strength, nature, and stability" of each parent's relationship with the child. *Id*.

RCW 26.09.187 rejects any presumption in favor of residential placement with the primary caregiver; instead, it requires the exclusive application of the seven factors in the statute. *In re Marriage of Kovacs*, 121 Wn.2d 795, 800, 854 P.2d 629 (1993). In *Kovacs*, although the mother was found to be the primary caregiver and responsible for the day-to-day care of the children's needs during the marriage, the court upheld the trial court's placement of the children with the father after considering the statutory factors. *Id*. at 799-800. As the appellant points out, the legislature also has declined to create a presumption in favor of a 50-50 parenting plan.

In this case, the trial court was presented with such starkly different pictures of the Sirianni home that the court, in a question to Warren, confirmed that it would have to conclude that at least one of the parents had lied in their testimony. According to Warren and his witnesses, though he worked full time on weekdays, he cared for the children on weekends, weekday mornings and evenings, and saw to any needs that might arise in the middle of the night, while Jeanette was sometimes emotionally absent and increasingly torn away from parenting duties by work on the farm and elsewhere. According to Jeanette and her witnesses, it was she who cared for them all day, through the night, and on weekends, while Warren—though a loving parent—was overly strict and only responsible for the children for a couple hours in the evening. Jeanette also accused Warren of abuse, which Warren strenuously denied. One of Jeanette's witnesses testified that he never saw any negative parenting from Warren and that Warren provided "positive reinforcement" to both children.

In its oral ruling, the court recited the seven statutory factors and methodically considered each one on the record. He found the children have a strong relationship with both parents. He found that the parents have a relatively equal ability to perform parenting functions. He found that Warren's work gave him some flexibility and there was testimony he was able to care for the children a full week at a time with some daycare. There is substantial evidence to support these findings.

6

Especially in dissolution cases with parents who present dramatically different pictures of a marriage, appellate courts are "in no position to find facts, reweigh the evidence, or decide witness credibility." *Magnuson v. Magnuson*, 141 Wn. App. 347, 351, 170 P.3d 65 (2007). There was no mention by the court at any point of a 50-50 presumption. While this plan may not preserve exactly the same balance of care hours from before the divorce, our parenting plan statute clearly contemplates that a change in the relationship necessitates some change in the parenting pattern. The trial court correctly applied the statutory factors to facts supported by substantial evidence when it ordered a shared parenting plan with 50-50 residential time.

*Child Support Deviation*

This court reviews child support orders for an abuse of discretion. *In re Marriage of McCausland*, 129 Wn. App. 390, 406, 118 P.3d 944 (2005), *rev'd on other grounds*, 159 Wn.2d 607, 152 P.3d 1013 (2007). If the trial court fails to set forth adequate reasons for deviating from the standard schedule, it has abused its discretion. *In re Marriage of Glass*, 67 Wn. App. 378, 384, 835 P.2d 1054 (1992). The reasons for a deviation must be written and supported by the evidence. *Id.* RCW 26.19.075(1)(d) authorizes trial courts to deviate from the standard schedule based on the residential schedule of a parenting plan, provided the receiving party still has sufficient funds to meet the basic needs of the child.

Here, substantial evidence supports the trial court's calculation of both parties' income and the court correctly calculated the standard support schedule from those facts. The court expressly found in its written order that the parents would split residential time equally—clearly a significant amount of time with the transferring party, Warren. It also found that a deviation would not result in a lack of resources in the receiving party's household. The trial court ordered a deviation in a written order and for a reason authorized by statute. It did not abuse its discretion in deviating from the standard child support schedule.

Relatedly, the appellant argues that the provision of the trial court's order that all third-party childcare be with a licensed provider is manifestly unreasonable. We disagree. This provision must be viewed in light of the appellant's contempt history for denying respondent his right of first refusal, as well as testimony that the appellant's mother and other friends she desires to use as care givers made derogatory statements about the respondent. Trial courts have broad authority to fashion provisions that restrict conduct that prejudices a child against a parent. With the wife previously having failed to permit the father the opportunity to provide child care under the temporary plan, the trial court understandably was not going to permit further child care by those who did not support both parents.

*Denial of Protection Order*

Appellate courts will not disturb a trial court's discretion to enter permanent protection orders absent an abuse of discretion. *Hecker v. Cortinas*, 110 Wn. App. 865, 869, 43 P.3d 50 (2002). Jeanette made increasingly serious abuse allegations at almost every stage of the litigation. Her requests for a protection order have been denied by multiple judicial officers on at least five different occasions. The judge that heard one request for a restraining order stated that Jeanette's first attorney was "a very good attorney who is not shy about coming in and asking for restraining orders when she needs them." Clerk's Papers at 245. Her first attorney did not request a restraining order and each court that these requests have come before has determined, based on live testimony, that a protection order was not warranted. Multiple judicial officers have heard Jeannette's allegations of abuse and Warren's denials. This court is not in a position to question the credibility determinations of courts that have the opportunity to listen and observe testimony first-hand.

The appellant also assigns error to two evidentiary rulings bearing on her ability to substantiate her allegations of abuse. This court reviews evidentiary rulings for an abuse of discretion. *State v. Lane*, 125 Wn.2d 825, 831, 889 P.2d 929 (1995).

First, the appellant claims the court erred in refusing to admit child hearsay evidence under ER 1101(c)(4). ER 1101 permits—but does not require—courts to waive most rules of evidence in certain settings, including requests for a protection order. The

9

court clarified on the record that it understood this power and exercised its discretion to not allow hearsay testimony. Additionally, this ruling was made in the context of a full trial on a dissolution of marriage, not a hearing limited to granting a protection order. As was discussed by respondent's attorney, even in a bench trial "once the bell's rung, the bell's rung." Report of Proceedings at 262. Allowing the child hearsay for a limited purpose at trial would open the door for it to be argued for every point at issue by both sides. The court did not abuse its discretion in disallowing this evidence.

Second, the appellant claims the court erred when it did not allow her to testify about attorney-client communications without waiving her privilege with respect to all related subject matter. Under ER 502, when there is a deliberate disclosure of privileged information, that waiver extends to all undisclosed material on the same subject that fairness requires be considered alongside the deliberate disclosure.

In this case, the court interrupted Jeanette's testimony as she was about to testify to conversations with her previous attorney regarding this case. The court was correct that this could comprise an intentional waiver of privilege in all communications concerning the dissolution proceedings that "ought in fairness to be considered together." ER 502(a). If she testified to these conversations, fairness could require her to be questioned on what she told her attorney about related issues. The court did not abuse its discretion in warning Jeanette about these potential consequences. Appellant, not the court, then decided to proceed without the testimony. There was no error.

10

*Attorney Fees*

Finally, the husband requests attorney fees under RCW 26.09.140.  This court exercises its discretion under the statute to decline the request.

The trial court did not abuse its discretion in crafting the parenting plan, deviating from the standard child support schedule, or denying a protection order.  Affirmed.

A majority of the panel has determined this opinion will not be printed in the Washington Appellate Reports, but it will be filed for public record pursuant to RCW 2.06.040.

_____
Korsmo, J.P.T.

WE CONCUR:

_____
Fearing, J.

_____
Pennell, C.J.

11