IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION ONE

| | | |
|---|---|---|
| In the Matter of the Marriage of<br>SAEED KALEY, | ) | No. 78694-6-I |
| | ) | |
| Appellant, | ) | |
| | ) | UNPUBLISHED OPINION |
| and | ) | |
| | ) | |
| NANCY KALEY, | ) | |
| | ) | |
| Respondent. | ) | FILED:  December 30, 2019 |

SCHINDLER, J. — Saeed Kaley appeals the superior court decision on revision to

enforce his agreement to pay maintenance to Nancy Kaley after she remarried.  We

conclude the court erred in relying on the doctrine of promissory estoppel to enforce the

agreement and to award attorney fees.  Because the unchallenged findings and the

record establish that the parties entered into an enforceable agreement expressly

superseding and replacing the maintenance provision in the separation contract, we

affirm entry of the judgment.  However, we reverse the award of attorney fees and

remand.

Separation Contract

Saeed and Nancy Kaley were married for 31 years.  On February 26, 2013,

Saeed and Nancy[1] entered into a "Property Settlement Agreement and Separation

---

[1] For clarity, we refer to the parties by their first names.  We intend no disrespect.

Contract" (Separation Contract). At the time, Nancy was 54-years-old. Their primary asset was the residence. Nancy agreed to transfer her interest in the residence to Saeed and execute a quitclaim deed. Saeed agreed to pay Nancy spousal maintenance of $2,000 a month from "July 15, 2013 through May 15, 2024" and that "maintenance shall be non-modifiable" as to amount or duration. The provision on maintenance states, in pertinent part:

> MAINTENANCE. Husband shall pay spousal maintenance to Wife in accordance with the schedule set forth in Exhibit D.[2] . . . In the event that Nancy Kaley remarries, spousal maintenance payments pursuant to this Agreement shall cease if they have not already done so according to the schedule in Exhibit D. . . . The parties agree that spousal maintenance shall be non-modifiable as to either amount or duration.

The parties agreed that "[i]n the event this marriage is dissolved, this Agreement shall be incorporated into the Decree of the court"; however, "[p]ursuant to RCW 26.09.070(5), it is agreed that this Agreement shall not be filed with the court unless it is necessary for enforcement purposes." The Separation Contract states that "[t]his writing constitutes the entire agreement between the parties. . . . No modification hereof shall be binding unless in writing and executed by both parties with the same formalities as this agreement."

Decree of Dissolution

The court entered the decree of dissolution on March 27, 2013. The decree awards Saeed the residence as separate property as "set forth in the separation

---

[2] Exhibit D states:

Maintenance Schedule

1. From July 12, 2012 through December 15, 2012, $1,200 per month. Wife acknowledges receipt of all such funds as of the signing of this Agreement.
2. From January 15, 2013 through June 15, 2013, $1,500 per month. Wife acknowledges receipt of the payment due January 15, 2013.
3. From July 15, 2013 through May 15, 2024, $2,000 per month.

contract . . . executed by the parties on February 26, 2013" that "is incorporated by reference as part of this Decree," but "pursuant to RCW 26.09.070(5), the separation contract is not filed with the court." The decree states, "Maintenance shall be paid as set forth in the separation contract" previously referenced.

Agreement To Modify Spousal Maintenance

In 2014, Nancy and Michael Pramhus lived together. On December 2, 2014, Saeed sent an e-mail to Nancy. Saeed said that even if Nancy decided to marry Pramhus, he would pay maintenance if she agreed to sign a release so he could qualify for a construction loan. The December 2 e-mail states, in pertinent part:

> If you agree to release me (only on paper) from paying maintenance agreement starting on Jan[uary] 1st 2015, I'll front load the monthly maintenance to $2,500 per month for the next 7.5 years. Instead of the original $2,000 / month for the remaining 9.5 years. AND I will agree to pay the entire IRS[3] assessment myself (will refund you for last couple of deductions). AND I will pay you an additional $1,000 (on top of the usual $1,000) as a [Christ]mas gift on Dec[ember] 15th.
>
> Please be assured that I WILL make the maintenance payments and will not back out of my obligation in any way. I give you my word. I am willing to share this email with both [our sons] so you can be sure I am not trying to pull a trick on you here. All I want is a legal document to release me (on paper) from paying maintenance, so I don't have to disclose it to the bank and qualify for my construction loan.
>
> This will be a tremendous help to me and I hope that it will also help you out as well. However, [i]f you feel uncomfortable about this proposal in any way, then don't do it. I have other options that I am pursuing right now.
> I just need to know if you are interested or not fairly soon.

Nancy told Saeed she was not interested in the proposal.

In spring 2016, the Lake Washington Institute of Technology did not renew Nancy's contract. Nancy had worked at the Lake Washington Institute of Technology

---

[3] Internal Revenue Service.

3

for 19 years. Nancy "had no plans to remarry until after the period of spousal maintenance had ended." However, Nancy asked Saeed if he would agree to continue paying maintenance if she married Pramhus in order to obtain medical coverage. At the time, Saeed was in the process of trying to obtain a bank loan for $1 million. Saeed agreed to pay Nancy maintenance until 2024 even if she married Pramhus if she agreed to provide proof that she had remarried and execute a document that he could provide to the bank stating that he would not have to pay maintenance under the decree of dissolution. Nancy agreed to marry Pramhus in May and execute a notarized document that Saeed could provide to the bank. On May 4, 2016, Nancy signed a notarized document that states:

> Saeed,
>
> I'd like to inform you that I will be getting married to Michael Pramhus, this month (May of 2016).
>
> As such, per our divorce decree (dated March 27, 2013), you will <u>not</u> have to pay me the monthly maintenance of $2,000 any longer - starting in June 2016.
>
> I will mail you a copy of my Marriage License when executed, for your records.[4]

Two days later on May 6, 2016, Saeed executed a notarized promissory note that supersedes the Separation Contract and the "<u>decree, related to . . . spousal maintenance</u>," and expressly states Saeed agrees to continue to pay maintenance after Nancy remarries:

> PROMISS[O]RY NOTE:
>
> <u>This document supersedes all previous agreements, including their divorce decree, related to Saeed Kaley's spousal maintenance obligations to Nancy Kaley.</u>

---

4 Emphasis in original.

I understand that you, Nancy Kaley are intending on getting married in May 2016.

I promise, as originally agreed, to continue to pay you spousal maintenance in the sum of $2,000 a month, in two $1000 monthly installments, directly deposited to your bank account, through until your birthday at age of 66 in May of 2024. The last payment will be made on May 15, 2024.

Saeed Kaley                                    Date [ ] 5-6-2016.[5]

On May 6, Saeed sent a text message to Nancy's sister Laurel Case asking her to arrange a meeting with Nancy as soon as possible to obtain the document she executed for the bank. The May 6 text message states:

Laurel: I had not asked for this recent round of changes / negotiations to our divorce decree. And was already in the middle of my permanent financing process with my bank. When Nancy approached me about marriage last week, I reached out to my bank and told them the situation has changed and asked to revise my loan amount to pay off some other private debts I took on to finish the new house. The mortgage broker is sending my loan package for approval on Monday with appraisal and other application documents. If I don't get the document from Nancy by Monday, I will revert back to the original loan amount and will not pursue this new option and will not agree to our arrangements. This is my reason for getting the doc[ument]s this weekend. Just thought you should have the whole story, as it is difficult to reason / communicate with Nancy.

On Monday, May 9, Saeed met Nancy and her sister at Starbucks to exchange the notarized documents. Shortly thereafter, Nancy and Pramhus married.

On June 3, Saeed sent Case a text message asking her to make sure Nancy sent him a copy of the marriage license. The June 3 text message states:

Hi Laurel,
I have sent two texts asking Nancy to send me a copy of her marriage license, as the bank needs it. I have not received any response. Would you please ask her to forward a scanned copy or a picture to me?
Thanks. Saeed.

---

[5] Emphasis in original.

Saeed paid Nancy maintenance of $2,000 a month from May until September 1, 2016. On September 16, 2016, the bank issued a loan to Saeed for $1 million. After obtaining the loan, Saeed refused to pay maintenance to Nancy. Nancy contacted Saeed about the delinquent maintenance payments. In an e-mail dated March 16, 2017, Saeed told Nancy, "Not sure what there is to discuss. You are married and maintenance is no longer due! End of story."

Motion To Enforce

On July 25, 2017, Nancy filed a motion on the family law motion calendar to enforce the agreement to pay maintenance. Nancy argued she and Saeed agreed to change the terms of the Separation Contract and the promissory note gave her the right to continue to receive spousal support payments. Nancy filed a declaration stating that if Saeed had not agreed to continue to pay maintenance, she would not have married Pramhus.

Saeed filed a motion to strike or dismiss. Saeed asserted Nancy improperly noted the motion on the family law motion calendar instead of the trial by affidavit calendar.[6] Saeed also argued the decree states Nancy is not entitled to maintenance after she remarried. Saeed filed a declaration in support of the motion to dismiss. Saeed cited the notarized document Nancy executed on May 4, 2016 that states there "would be no maintenance payments once she re-marries." Saeed states Nancy "gave me this statement as I had previously requested it to be presented for my potential lender, because she told me she was planning to get married to be able to be placed on her new husband's medical insurance." Saeed conceded that "[o]n May 6, 2016, I

---

[6] "Unless otherwise assigned by the court, support-only modification trials shall be heard on the Trial by Affidavit Calendar by a Family Law Commissioner." King County Local Family Law Rule 14(d)(3).

signed a document where I stated that I would continue to pay the maintenance despite my ex-wife's re-marriage." But Saeed argued, "I did not receive any consideration" for entering into the promissory note.

A superior court commissioner entered an order on the motion to enforce or clarify the decree. The order states, "The court finds that the parties were precluded from modifying [maintenance] by petition, but not by agreement," and incorporates the promissory note as an exhibit. The commissioner did not rule on the amount owed. The order states, "The court directs the Wife to file a new/separate Motion to Enforce now that the Husband's agreed modification has been incorporated into a court order."

Saeed filed a motion to revise the commissioner's ruling. Saeed argued the commissioner erred by considering the motion on the family law motion calendar, the evidence did not support finding there "was an enforceable agreement to modify post-decree maintenance," and the "alleged modification" did not comply with the same required formalities as the Separation Contract incorporated in the decree. The court granted the motion. The court found there were disputed issues that should be resolved in a trial by affidavit. The order states, "The court in vacating the Commissioner's Order does not reach a decision on the underlying merits of the dispute."

Trial by Affidavit

On November 27, 2017, Nancy filed a petition to enforce the May 6, 2016 promissory note on the trial by affidavit calendar. Nancy argued the promissory note was an enforceable agreement. In the alternative, Nancy argued the court should enforce the agreement to pay maintenance under the doctrine of promissory estoppel. Nancy submitted a declaration and the declaration of her sister Laurel Case. Case

attached the text messages from Saeed. Case states Saeed "appeared desperate to get Nancy's signed paper 'in time,' and then later to get additional documentation to his lender." Case said Saeed told "me in his own words" that his "intent" was to modify the terms of the decree on maintenance. Case asserts that absent the promissory note, Nancy would not have remarried:

> For her part, Nancy was clear at all times that she would not get married to someone else if it meant losing her spousal maintenance. She and Saeed had mostly debt and very little property when they divorced, so the long-term maintenance award was the only "asset" she received after 30 years of marriage . . . . She would not have married Michael in 2016 without the signed assurance from Saeed that he would continue to pay spousal maintenance, even if she married. At the time, she told me she was between jobs and was facing a high health insurance payment unless she was able to be added to Michael's benefits as his spouse. The idea—being able to get married but also receiving maintenance—was something Saeed had suggested on another occasion—on his terms, so it wasn't a brand new idea proposed for the first time by Nancy. I recall Nancy discussing that idea with me in 2014 when Saeed first raised it. That was also when he was trying to get a different loan. Nancy did not marry Michael until she had Saeed's promise in writing, notarized, to give her assurance that maintenance would not terminate as a result.[7]

Saeed argued the agreement to modify spousal maintenance was not enforceable because the notarized document Nancy executed on May 4, 2016 and the May 6, 2016 promissory note do not comply with the Separation Contract requirement that no modification "shall be binding unless in writing and executed by both parties with the same formalities as this agreement." Saeed also argued that because the Separation Contract governs, promissory estoppel does not apply.

The commissioner entered an "Order Modifying Decree." The commissioner found that there "was an express agreement to modify the Decree" and that "the documents signed and notarized" by the parties on May 4, 2016 and May 6, 2016

---

[7] Emphasis in original.

"satisfy the requirements that both parties sign a modification and that the modification be done with the same formalities as the [Separation Contract] (which was signed and notarized)."

The commissioner found Saeed agreed to pay Nancy maintenance after remarriage so that she could receive medical benefits and in exchange, she would provide documentation so he could obtain a loan:

> The Husband promised to pay the Wife ongoing spousal maintenance under the terms of the parties' [Separation Contract], notwithstanding her subsequent marriage in May 2016. The parties understood that the Wife would benefit from receiving medical coverage through a new spouse, a benefit that was lost when the Wife lost her job shortly before this new agreement was discussed and entered into. The Husband also suggested a benefit to him in this arrangement in 2014.
>
> . . . .
>
> . . . In consideration for the Husband's promise to continue payments beyond remarriage, the Wife signed a document for the Husband's benefit stating that his obligation terminated. This was for the purpose of assisting the Husband in qualifying for a loan. The Wife cooperated with the Husband's demands to provide a copy of her marriage certificate to the lender. Text messages to the Wife's sister verify the Husband's requests.

The commissioner found Nancy relied on Saeed's promise to pay maintenance:

> The Wife relied on the Husband's ongoing promise to pay spousal maintenance and would not have remarried but-for her reliance on the Husband's promise to make ongoing payments. She married her current husband on May 9, 2016, after the Husband executed the agreement to continue paying spousal maintenance if she remarried.

The commissioner ordered Saeed to pay Nancy $8,000 plus interest in unpaid spousal maintenance and $5,000 in attorney fees.

Saeed and Nancy each filed a motion to revise the Order Modifying Decree. Saeed argued the commissioner erred in finding the notarized May 4, 2016 document

9

executed by Nancy and the May 6, 2016 promissory note constitute an enforceable agreement. Saeed asserted the notarized documents did not comply with the terms of the Separation Contract that prohibited modification unless "executed by both parties with the same formalities" as the Separation Contract. Saeed argued the notarized document Nancy executed on May 4, 2016 clearly states Nancy "did not intend to modify maintenance." Saeed also asserted the commissioner erred in relying on promissory estoppel. Nancy argued the commissioner "erred in declining to enforce the agreement between the time when the Husband unilaterally stopped payments and the date the Wife filed her Petition to Modify."

The superior court disagreed with the commissioner's finding that the "formalities required" by the Separation Contract were met and that the parties entered into an enforceable agreement. However, the court found that because "the parties' intent to form a valid contract is evident, . . . to prevent injustice to the Wife," Nancy was entitled to continued spousal maintenance under the doctrine of promissory estoppel. The "Order on Motion for Revision" states, in pertinent part:

> The court finds good cause to approve this Order, and specifically finds.
>
> The court disagrees with the Commissioner as to the presence of a valid contract, finding that the formalities required by the [Separation Contract] (merged into the Decree) were not met, but that the parties' intent to form a valid contract is evident, thus is a "failed contract" situation. Under a promissory estoppel theory, to prevent injustice to the Wife, the court has authority to grant the equitable relief requested.
>
> Specifically, the elements of promissory estoppel are met as follows:
>
> (1) Promise to pay. The Husband very clearly promised to pay maintenance to the Wife until May 2024, even if she remarried. There is no dispute about the terms of this promise.

10

(2) <u>Expectation that Wife would rely on this promise</u>. Yes. Both parties understood that the Wife would remarry, but only if she had the Husband's promise to continue paying maintenance.

(3) <u>Change of position</u>. The Wife changed her position. She remarried, after receiving the signed Note/Promise from the Husband.

(4) <u>Justifiable reliance</u>. The court rejects the argument that the Wife should have known that the formalities required by the [Separation Contract] were not met in the two documents the parties attempted to reflect their agreement. The court does not apply a "lawyer" standard to their interpretation and understanding of what was required. She waited until he provided the statement, and then she got married.

(5) <u>Injustice if the court did not award damages</u>: Yes. This was a 31-year marriage. The Wife makes about $4,500/month. Her current husband, now retired, made $58,000/year. The Husband in this action (Saeed Kaley) works at Microsoft and reported $208,000 in earnings on his recent tax return. With the Wife's help (providing a marriage certificate), the Husband was able to qualify for a $1 million loan and thus received the benefit of the Wife's actions. She did not receive the benefit she expected, and there is an economic injustice if the court does not redress it.[8]

The court entered a judgment against Saeed in the amount of $43,000 plus interest for the maintenance payments he did not make to Nancy. The order states, "The Husband's promise to pay the Wife maintenance was effective and enforceable as of the date of the express, written agreement (labeled "promissory note"), May 6, 2016." The court reserved ruling on attorney fees.

The court denied Saeed's motion for reconsideration. On July 2, 2018, the court entered a supplemental order awarding Nancy attorney fees of approximately $22,500. The order states:

This matter came before the court on Nancy Kaley's request for Modification/Enforcement of Saeed Kaley's 5/6/2016 written promise to pay spousal maintenance as stated in the Decree of Dissolution, even if Nancy remarried. The court granted Nancy's requests on the basis of

---

[8] Emphasis in original.

11

promissory estoppel. Saeed is ordered to pay Nancy spousal maintenance according to the 5/6/2016 promise he made, i.e., $2,000/month through May 2024.

Appeal of Order on Revision

Saeed appeals the order on revision. Saeed contends the court erred by enforcing the promise to pay Nancy spousal maintenance after she remarried based on the doctrine of promissory estoppel.

On a motion to revise a commissioner's decision, the superior court reviews de novo the findings of fact and conclusions of law of the commissioner based upon the evidence and issues presented to the commissioner. State v. Ramer, 151 Wn.2d 106, 113, 86 P.3d 132 (2004). Where, as here, the superior court does not agree with the decision of the commissioner on revision, we review only the superior court decision. Ramer, 151 Wn.2d at 113. The superior court is "authorized to determine its own facts based on the record before the commissioner." In re Marriage of Dodd, 120 Wn. App. 638, 644, 86 P.3d 801 (2004).

Saeed contends that because the parties' agreement to modify maintenance did not comply with the requirements of the Separation Contract, the court did not have jurisdiction to enforce the promissory note.

RCW 26.09.170(2) states that "[u]nless otherwise agreed in writing or expressly provided in the decree," the "obligation to pay future maintenance is terminated" upon the remarriage of the party receiving maintenance. RCW 26.09.070(7) states:

> When the separation contract so provides, the decree may expressly preclude or limit modification of any provision for maintenance set forth in the decree. Terms of a separation contract pertaining to a parenting plan for the children and, in the absence of express provision to the contrary, terms providing for maintenance set forth or incorporated by reference in the decree are automatically modified by modification of the decree.

12

RCW 26 09.070(5) states:

Unless the separation contract provides to the contrary, the agreement shall be set forth in the decree of dissolution, legal separation, or declaration of invalidity, or filed in the action or made an exhibit and incorporated by reference, except that in all cases the terms of the parenting plan shall be set out in the decree, and the parties shall be ordered to comply with its terms.

Here, in accord with RCW 26.09.070(5), the decree expressly incorporates by reference the Separation Contract.

The interpretation of a contract is a question of law we review de novo. Berg v. Hudesman, 115 Wn.2d 657, 668, 801 P.2d 222 (1990); Colo. Structures, Inc. v. Ins. Co. of the W., 161 Wn.2d 577, 586, 167 P.3d 1125 (2007). When the parties incorporate an agreement into a dissolution decree, we must ascertain the intent of the parties. In re Marriage of Smith, 158 Wn. App. 248, 255, 241 P.3d 449 (2010). "Courts will not revise a clear and unambiguous agreement or contract for parties or impose obligations that the parties did not assume for themselves." Condon v. Condon, 177 Wn.2d 150, 163, 298 P.3d 86 (2013).

We determine intent by focusing on the objective manifestation of the parties in the written contract. Hearst Commc'ns, Inc. v. Seattle Times Co., 154 Wn.2d 493, 503, 115 P.3d 262 (2005). Accordingly, we consider only what the parties wrote; giving words in a contract their ordinary, usual, and popular meaning unless the agreement as a whole clearly demonstrates a contrary intent. Hearst, 154 Wn.2d at 503-04. A contract " 'should be construed as a whole and, if reasonably possible, in a way that effectuates all of its provisions.' " Colo. Structures, Inc., 161 Wn.2d at 588[9] (quoting

---

[9] Footnote omitted.

13

Colo. Structures, Inc. v. Ins. Co. of the W., 125 Wn. App. 907, 915-16, 106 P.3d 815 (2005)).

We reject Saeed's interpretation of the language in the Separation Contract and conclude the court erred in finding the agreement of Saeed was unenforceable because "the formalities" required by the Separation Contract "were not met." The modification provision in the Separation Contract that states, "No modification hereof shall be binding unless . . . executed by both parties with the same formalities as this agreement" is unrelated to the maintenance provision. The plain and unambiguous language of the maintenance provision states that maintenance is "non-modifiable."

We also conclude the court erred in finding that although the parties intended to form a valid contract, it was a "failed contract."

We have previously recognized a distinction between what courts may do and what the parties may do with respect to maintenance. "A separation contract which precludes or limits the court's power to modify an agreed maintenance award, once approved by the court and embodied into a decree, is to be enforced in accord with its terms." In re Marriage of Glass, 67 Wn. App. 378, 390, 835 P.2d 1054 (1992) (citing RCW 26.09.070(7)). A court may not enter an order for maintenance if the decree or separation contract provides that maintenance is nonmodifiable. Glass, 67 Wn. App. at 390; In re Marriage of Hulscher, 143 Wn. App. 708, 710, 180 P.3d 199 (2008). However, parties can expressly agree to modify the maintenance. Kinne v. Kinne, 82 Wn.2d 360, 363, 510 P.2d 814 (1973). "An agreement of a husband to pay a designated amount of support is an undertaking which is favored by the courts." Kinne, 82 Wn.2d at 363. Nothing in the law, public policy, or reason prohibits a former spouse

14

from voluntarily and formally obligating himself or herself "to do more than the law requires . . . in providing support" for a former spouse. See Kinne, 82 Wn.2d at 363.

On appeal, we may affirm the court on any ground supported by the record. In re Marriage of Rideout, 150 Wn.2d 337, 358, 77 P.3d 1174 (2003). Unchallenged findings of fact are verities on appeal. Cowiche Canyon Conservancy v. Bosley, 118 Wn.2d 801, 808, 828 P.2d 549 (1992). Here, the unchallenged findings establish the parties expressly agreed to modify the terms of the Separation Contract on maintenance.

The promissory note executed by Saeed on May 6, 2014 unequivocally states, "This document supersedes all previous agreements, including their divorce decree, related to Saeed Kaley's spousal maintenance obligations to Nancy Kaley."[10] The formation of a contract requires an offer, acceptance, and consideration. Veith v. Xterra Wetsuits, LLC, 144 Wn. App. 362, 366, 183 P.3d 334 (2008). The unchallenged findings and uncontroverted record establish as a matter of law Saeed and Nancy entered into an enforceable agreement. Saeed agreed to continue to pay Nancy maintenance after she remarried in exchange for providing him documentation for a financial benefit. The promissory note executed by Saeed on May 6, 2014 states:

> I understand that you, Nancy Kaley are intending on getting married in May 2016.
>
> I promise, as originally agreed, to continue to pay you spousal maintenance in the sum of $2,000 a month, in two $1000 monthly installments, directly deposited to your bank account, through until your birthday at age of 66 in May of 2024. The last payment will be made on May 15, 2024.

---

[10] Emphasis in original.

The unchallenged findings establish Saeed received consideration in exchange for the agreement to execute the promissory note:

> With the Wife's help (providing a marriage certificate), the Husband was able to qualify for a $1 million loan and thus received the benefit of the Wife's actions.

The promissory note creates an independent contractual obligation to pay Nancy spousal maintenance.

Because we conclude the parties entered into an enforceable contract, the doctrine of promissory estoppel does not apply. Klinke v. Famous Recipe Fried Chicken, Inc., 94 Wn.2d 255, 261, 616 P.2d 644 (1980).

> The purpose of promissory estoppel is "to make a promise binding, under certain circumstances, without consideration in the usual sense of something bargained for and given in exchange. If the promisee's performance was requested at the time the promisor made his promise and that performance was bargained for, the doctrine is inapplicable."

Klinke, 94 Wn.2d at 261 n.4 (quoting Raedeke v. Gibraltar Savs. & Loan Ass'n, 111 Cal. Rptr. 693, 697, 517 P.2d 1157 (1974)); see also Del Hayes & Sons, Inc. v. Mitchell, 230 N.W.2d 588, 593, 304 Minn. 275 (1975) (promissory estoppel implies contract from unilateral otherwise unenforceable promise and is wholly inapplicable where actual contract exists); Sacred Heart Farmers Coop. Elevator v. Johnson, 232 N.W.2d 921, 923 n.1, 305 Minn. 324 (1975) (same).

Attorney Fees

Saeed contends the court erred in awarding Nancy attorney fees. Because the undisputed language of the order awarding fees established the court relied on the doctrine of promissory estoppel, we reverse the award of attorney fees.

16

We affirm entry of the judgment ordering Saeed to pay Nancy the amount owed under the terms of the promissory note, reverse the award of attorney fees, and remand.[11]

WE CONCUR:

Schindler, J

Mann, ACJ

---

[11] We deny the requests for attorney fees on appeal.