
IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| In the Matter of the Marriage of: | ) | |
| | ) | No. 40568-1-III |
| KRISS CARPENTER, | ) | |
| | ) | |
| Appellant, | ) | |
| | ) | |
| and | ) | UNPUBLISHED OPINION |
| | ) | |
| JULIANNE CARPENTER, | ) | |
| | ) | |
| Respondent. | ) | |

COONEY, J. — Julianne Carpenter[1] petitioned to dissolve her and Kriss

Carpenter's marriage. In the process, the two executed a "Separation and Property

Settlement Agreement" (Agreement). The Agreement, later incorporated into their

decree of dissolution, required Kriss to pay Julianne spousal maintenance and make her

mortgage payments. Kriss abided by the terms of the Agreement until losing his

---

[1] The parties are referred to by their first names for clarity. No disrespect is
intended.

employment in 2023. Thereafter, Kriss petitioned to modify these obligations, citing a substantial change in circumstances. A superior court commissioner granted the petition in part, relieving Kriss of his obligation to pay spousal maintenance. Both parties moved to revise the commissioner's order. A superior court judge granted Julianne's motion to revise, finding the terms of the Agreement were non-modifiable. Consequently, Kriss' petition for modification was denied.

Kriss appeals, arguing the court erred in finding the Agreement was non-modifiable. He further argues the court erred in not awarding him attorney fees. Both parties request attorney fees on appeal.

We conclude spousal maintenance is modifiable under the terms of the Agreement, reverse the order denying Kriss' petition on this issue, and remand for a hearing on the petition. We further conclude Kriss' obligation to pay Julianne's mortgage is a non-modifiable property and debt distribution and affirm the denial of Kriss' petition on this issue. We decline review of Kriss' claimed error related to his request for attorney fees. Finally, we decline to award either party their attorney fees on appeal.

## BACKGROUND

Julianne and Kriss divorced in 2016 after almost 25 years of marriage. The parties subsequently executed an Agreement that resolved issues related to the distribution of their assets and debts. The Agreement was incorporated into their decree of dissolution.

Among other provisions, section 7 of the Agreement, titled "Spousal Maintenance,"

provided:

> [Kriss] shall pay [Julianne] spousal maintenance in the amount of
> $5,200 per month until [Julianne] turns 65 on March 5, 2030 at which time
> all spousal maintenance terminates. If [Julianne] remarries or cohabitates
> with a significant other prior to age 65, the spousal maintenance paid from
> [Kriss] to [Julianne] shall reduce to $2,000.00 per month and will also
> terminate upon [Julianne] reaching 65 on March 5, 2030. Regardless of the
> above, spousal maintenance shall terminate upon the death of either party.

Clerk's Papers (CP) at 357-58. Section 5 of the Agreement, labeled "Property," awarded

Julianne the parties' home. CP at 352. Under section 6 of the Agreement, titled

"Community Debts and Liabilities," the mortgage associated with the parties' home was

assigned to Kriss. CP at 355. Finally, section 2, titled "Waivers," provided:

> 2.7 No modification or waiver of any of the terms of this Agreement shall
> be valid as between the parties unless in writing and executed with the
> same formality of this Agreement; and no waiver of any breach or default
> hereunder shall be deemed a waiver of any subsequent breach or default of
> the same or similar nature, no matter how made or how often recurring.

CP at 349.

During the marriage, Kriss worked "in the insurance industry" as "a district

manager in Washington, where [he] was responsible for recruiting new agents for

Farmers Insurance." CP at 92. According to Kriss, he "was making a very good living."

CP at 92. Kriss "was able to support [his] family, pay spousal support, Julianne's

mortgage, pay off all the debt [he] had taken in the divorce, and still have a very

comfortable life" for many years after the divorce. CP at 92.

Due to the effects of the COVID-19 pandemic, Kriss was unable to meet his recruiting goals and received "hints" from his employer that he might "be let go." CP at 92. His prediction was correct; Kriss was informed at the end of 2022 that his contract with Farmers Insurance was terminated effective January 2023. Kriss does not possess any post-secondary degrees and struggled to find employment after his position ended with Farmers Insurance. Kriss eventually accepted employment at a casino where he earned $24.42 per hour. He claimed his gross income in 2023 was $47,107, an average of $3,925 per month.

In 2023, Kriss petitioned to modify his "spousal maintenance and domestic support obligation" due to "a substantial change in circumstances." CP at 5, 9. Kriss argued he no longer had the ability to pay spousal maintenance. He further sought to have his obligation to pay Julianne's mortgage terminated. Julianne responded that the petition should be denied because "maintenance is non-modifiable under the parties' [Agreement]." CP at 19.

A hearing on Kriss' petition was scheduled before a superior court commissioner but was ultimately continued because Julianne had yet to file her "asset and liability lists," and the commissioner was unable to access the more than "400 pages of sealed financial source documents." CP at 237-38. At the conclusion of the belated hearing, the commissioner found "there has been a substantial change in circumstances." CP at 9. Thus, the commissioner "terminate[d] spousal maintenance." CP at 159.

As to the requirement that Kriss pay Julianne's mortgage, the commissioner explained that "property distributions may not be revoked or modified unless the court finds the existence of conditions that justify the reopening of a judgment" under RCW 26.09.170. CP at 214. The commissioner noted that under the "Property" section of the Agreement, "[t]he wife shall be given the interest in [the home]" and under the "Community Debts and Liabilities" section, the "[h]usband shall be awarded . . . [the] U.S. Bank mortgage on [the home]." CP at 215 (internal quotation marks omitted). The commissioner therefore found "there's no doubt that this was a property and debt distribution" and declined to modify or terminate Kriss' obligation to pay Julianne's mortgage. CP at 216.

Both parties moved for revision of the commissioner's order. Julianne filed a "Memorandum in Support of Revision" in advance of a hearing on the motions. CP at 252-61. The next day, Kriss filed a "Motion and Memorandum for Attorney's Fees" based on Julianne's alleged intransigence as well as a motion to strike Julianne's "Memorandum in Support of Revision." CP at 263-68, 271-75. In it, Kriss requested that if the court were to consider Julianne's memorandum, the hearing should be continued "so that he has an opportunity to respond to the untimely legal briefing in order to neutralize the prejudice to him that results from the consideration of new materials from only one party." CP at 271.

The judge found that Kriss "should be granted additional time to respond in writing to any new legal arguments raised in [Julianne's] legal memorandum." CP at 276. The judge ordered that Kriss identify "[a]ny specific facts that [he] believes should be stricken because they were raised by [Julianne] in the revision hearing or in [Julianne's] legal memorandum but were not based on facts included in documents considered by the commissioner" as well as "[a]ny legal arguments by [Julianne] in opposition to those that he believes were raised by [Julianne] for the first time in the revision hearing or in [Julianne's] legal memorandum." CP at 277. The judge "reserved" on Kriss' motion for attorney fees. CP at 277. Kriss later filed his responsive legal memorandum.

The competing motions proceeded to a hearing, concluding with the judge finding, in relevant part:

> A. The Court finds that the request to modify the property distribution of the mortgage debt awarded to [Kriss] in the decree pursuant to the settlement agreement is governed by the provisions of RCW 26.09.170(1), which incorporates the equivalent test for modifying judgments in CR 60.
>
> B. On this record, the Court does not find that the statutory standard was met and the property distribution of the debt from [Kriss] to [Julianne] is precluded under both the terms of the settlement agreement incorporated by the decree and Washington law.
>
> . . . .
>
> D. The Court finds that under Washington law (*Yearout v. Yearout*, 41 Wn.App. 897 (1985)) the parties to a written settlement agreement are not required to utilize the word, "non-modifiable" in order to demonstrate their

6

> intent that a spousal maintenance award be non-modifiable without the consent of the parties.
>
> E. The mutual intent of the parties in this settlement agreement was to make the spousal maintenance payments non-modifiable without the written consent of both parties based on both the plain language of the document in the provisions mentioning maintenance and the overall language of the document, particularly in regards to the word "shall pay" in Section 7 on maintenance and the language precluding all modification without the consent of the parties at Section 2.7; and the fact that this specific set of maintenance payments appeared to be in consideration for Ms. Carpenter giving up her rights to property and interests awarded to Mr. Carpenter.

CP at 310-11. The judge therefore denied Kriss' "motion to revise as to the denial of his motion to modify his property allocation of debt by transferring it to Julianne." CP at 311. The judge granted Julianne's "motion to revise as to the modification of her spousal maintenance award to zero going forward and order[ed] that [Kriss] immediately resume paying [Julianne] from the date of [the] order." CP at 311.

Kriss timely appeals.

## ANALYSIS

### SPOUSAL MAINTENANCE AND MORTGAGE PAYMENT OBLIGATIONS

Kriss argues the judge erred when he found spousal maintenance and the requirement he pay Julianne's mortgage were non-modifiable under the terms of the Agreement. We agree with his first contention and disagree with the second.

On a motion to revise a commissioner's decision, the superior court reviews de novo the findings of fact and conclusions of law of the commissioner based on the

evidence and issues presented to the commissioner. *State v. Ramer*, 151 Wn.2d 106, 113, 86 P.3d 132 (2004). On revision, we review the superior court judge's decision when the superior court does not adopt the decision of the commissioner. *Id.*

"We review a modification order to determine whether substantial evidence supports the trial court's findings and whether the court made an error of law that may be corrected on appeal." *In re Marriage of Hulscher*, 143 Wn. App. 708, 713, 180 P.3d 199 (2008). Substantial evidence exists to support a finding of fact if the record contains sufficient evidence to persuade a fair-minded, rational person of the truth of the determination. *Bering v. SHARE*, 106 Wn.2d 212, 220, 721 P.2d 918 (1986).

As a preliminary matter, Kriss argues the trial court erred in allowing Julianne to raise new issues on revision. Kriss points to LAR 0.7(e)(2) which provides, "[t]he [revision] hearing will be on the factual record made before the Commissioner." Kriss contends Julianne violated this rule when she filed her "Memorandum in Support of Revision," that was not previously filed for the hearing before the commissioner. CP at 252-60. Kriss does not allege the memorandum contained new issues but, instead, argues it contained new arguments in support of previously raised issues. He also posits that the memorandum was untimely.

Even if Julianne's memorandum on revision was in violation of the superior court's local rules or was untimely, Kriss cannot demonstrate that he was prejudiced. Kriss filed a motion to strike the memorandum or, alternatively, that he be given the

"opportunity to respond to the [memorandum] in order to neutralize the prejudice to him that results from the consideration of new materials from only one party." CP at 271. The judge granted Kriss' request and allowed him additional time to respond to Julianne's new legal arguments. The judge also requested "a designation of any specific facts that [Kriss] believes should be stricken." CP at 277. Thereafter, Kriss filed a "Memorandum of Authorities" that was responsive to Julianne's memorandum. CP at 279-92. Kriss identified no facts or arguments that he contended should be struck. Because Kriss was given the opportunity to respond to Julianne's arguments, and because he identified no information in Julianne's memorandum that should be struck, the judge did not err in considering both Julianne and Kriss' legal memoranda on revision.

*Spousal Maintenance*

Turning to the merits, Kriss contends the judge erred when he held that spousal maintenance was non-modifiable because the Agreement lacked the express language under RCW 26.09.070(7) that maintenance was non-modifiable. RCW 26.09.070(7) states that "[w]hen the separation contract so provides, the decree may expressly preclude or limit modification of any provision for maintenance set forth in the decree." Under this part of the statute, a non-modifiable maintenance award is permissible if such provision is included in a separation contract the parties entered. *In re Marriage of Short*, 125 Wn.2d 865, 876, 890 P.2d 12 (1995).

9

Here, the judge found, in relevant part:

> The mutual intent of the parties in this settlement agreement was to make the spousal maintenance payments non-modifiable without the written consent of both parties based on both the plain language of the document in the provisions mentioning maintenance and the overall language of the document, particularly in regards to the word "shall pay" in Section 7 on maintenance and the language precluding all modification without the consent of the parties at Section 2.7; and the fact that this specific set of maintenance payments appeared to be in consideration for Ms. Carpenter giving up her rights to property and interests awarded to Mr. Carpenter.

CP at 311.

Kriss argues that under RCW 26.09.070(7), the Agreement lacked an express provision stating that spousal maintenance is non-modifiable. The first step in discerning the meaning of the term "expressly" is to look to the ordinary definition of the term. *Lockett v. Saturno*, 21 Wn. App. 2d 216, 223, 505 P.3d 157 (2022). If the statute's meaning is plain on its face, then the court gives effect to that plain meaning. *Dep't of Ecology v. Campbell & Gwinn, LLC.*, 146 Wn.2d 1, 9-10, 43 P.3d 4 (2002). A dictionary may be used to ascertain the ordinary meaning of an undefined term. *Seattle Hous. Auth. v. City of Seattle*, 3 Wn. App. 2d 532, 538, 416 P.3d 1280 (2018). "Unlikely, absurd or strained results are to be avoided." *Morris v. Baker*, 118 Wn.2d 133, 143, 821 P.2d 482 (1992).

The plain meaning of the statute controls. The term "express" or "expressly" is defined as "directly and distinctly stated or expressed rather than implied or left to inference" or "not dubious or ambiguous." WEBSTER'S THIRD NEW INTERNATIONAL

10

DICTIONARY 803 (1993). Consistent with this definition, in prior cases where agreements contained provisions making maintenance non-modifiable, the non-modifiability of spousal maintenance was clear. In *Hulscher*, the decree of dissolution, as agreed to by the parties, stated that "[t]he spousal maintenance shall terminate upon the death of either spouse [or] upon the remarriage of [the wife]. *Otherwise, the spousal maintenance is not modifiable*." 143 Wn. App. at 711 (emphasis added). In *In re Marriage of Glass*, the decree of dissolution ordered the "maintenance obligation *shall be non-modifiable* by either party in duration and amount." 67 Wn. App. 378, 382, 835 P.2d 1054 (1992) (emphasis added). In *Yearout v. Yearout*, the parties' separation agreement stated, in relevant part, "Pursuant to RCW 26.09.070, this contract may *not be modified by the court* without the mutual consent of the parties." 41 Wn. App. 897, 898, 707 P.2d 1367 (1985) (emphasis added). In *Yearout*, this court noted that inclusion of the exact words "maintenance is non-modifiable" is "prudent" but its "absence is not fatal to a contention that a maintenance provision in a decree of dissolution is non-modifiable." *Id.* at 899. Howbeit, the court held the language in the decree of dissolution, quoted above, was "sufficiently express to preclude modification of the maintenance provision." *Id.* at 900.

Having determined the statute is unambiguous, the next question is whether the Agreement expressly made maintenance non-modifiable. We conclude it did not.

The interpretation of a contract is a question of law we review de novo. *Berg v. Hudesman*, 115 Wn.2d 657, 668, 801 P.2d 222 (1990). When parties incorporate an

11

agreement into their decree of dissolution, we must determine the intent of the parties. *In re Marriage of Smith*, 158 Wn. App. 248, 255, 241 P.3d 449 (2010). "Courts will not revise a clear and unambiguous agreement or contract for parties or impose obligations that the parties did not assume for themselves." *Condon v. Condon*, 177 Wn.2d 150, 163, 298 P.3d 86 (2013).

Here, language mandating that spousal maintenance is non-modifiable is absent from the Agreement. The statute is clear—the decree must "*expressly*" preclude or limit maintenance. RCW 26.09.070(7) (emphasis added). Julianne posits that the Agreement implicitly made maintenance non-modifiable because it "sets forth two conditions upon which maintenance could be reduced or eliminated," neither of which were met. Resp't's Br. at 34. Contrary to Julianne's argument, this is not the type of "express" language necessary to make maintenance non-modifiable. Moreover, she points to section 2.7 of the Agreement, which the judge also relied on in making his findings, that states, "No modification or waiver of any of the terms of this Agreement shall be valid as between the parties unless in writing and executed with the same formality as this Agreement." CP at 349. This provision does not indicate that the *court* may not modify the Agreement nor does it reference RCW 26.09.070(7) or otherwise expressly state that maintenance is non-modifiable. Additionally, section 2.7 is contained in the "Waivers" section of the Agreement, not the "Spousal Maintenance" section. CP at 347, 357.

Finally, Julianne argues the language in the Agreement, stating that Kriss "shall pay" Julianne maintenance "in the amount of $5,200 per month" until she is 65 or until she remarries at which point maintenance is modified or terminated, indicates spousal maintenance is non-modifiable. CP at 357. As Kriss points out, the "shall pay" language is standard, and similar language is included in mandatory family law forms in Washington.[2] This is notable because non-modifiable spousal maintenance may not be ordered by a court in this state. *See* RCW 26.09.170(1). Aside from the standard language stating Kriss "shall pay" Julianne spousal maintenance, there is no provision in the Agreement's spousal maintenance section expressly indicating maintenance is non-modifiable.

Neither RCW 26.09.070(7) nor the Agreement are ambiguous. The statute requires a clear expression that spousal maintenance is to be non-modifiable and there is no such provision in the parties' Agreement. Thus, maintenance is modifiable as a matter of law.[3]

---

[2] FL Divorce 241, Section 13, https://www.courts.wa.gov/forms/documents/FL%20Divorce%20241%20Final%20Divorce%20Order_06_2024%20(2).pdf ("The [husband or wife] *must pay* spousal support as follows." (emphasis added)).

[3] The parties also quibble over who the drafter of the Agreement was, as ambiguities in a contract are construed against the drafter. *Rouse v. Glascam Builders, Inc.*, 101 Wn.2d 127, 135, 677 P.2d 125 (1984). Because the Agreement is unambiguous, we decline to address the parties' arguments regarding construing the Agreement against the drafter.

13

*Mortgage Payments*

Kriss next argues the judge erred when he affirmed the commissioner's order denying his request to modify the requirement that he pay Julianne's mortgage.

The commissioner incorporated her oral ruling into her final order. In her oral ruling, the commissioner explained that under RCW 26.09.170, "property distributions may not be revoked or modified unless the court finds the existence of conditions that justify the reopening of a judgment." CP at 214. Moreover, the commissioner noted that section 5 of the Agreement, entitled "Property," stated, "[t]he wife shall be given the interest in [the home]." CP at 215 (internal quotations omitted). Further, section 6, entitled "Community Debts and Liabilities," stated the "[h]usband shall be awarded . . . [the] U.S. Bank mortgage on [the home]." CP at 215 (internal quotations omitted). The commissioner therefore found that Kriss' obligation to pay Julianne's mortgage was a non-modifiable property and debt distribution. On revision, the judge declined to revise the commissioner's order denying modification of "[Kriss'] property allocation of debt." CP at 311.

Here, the commissioner and the judge correctly concluded that, as a matter of law, Kriss' obligation to pay Julianne's mortgage is non-modifiable because it is a property and debt allocation. As the commissioner properly recognized, RCW 26.09.170(1)(b) states that "[t]he provisions as to property disposition may not be revoked or modified,

14

unless the court finds the existence of conditions that justify the reopening of a judgment under the laws of this state."

Kriss argues because the "parties did not refinance the loan into Kriss's name, nor was Kriss obligated to refinance the mortgage into his name as one would expect if the debt had been assigned to him as part of the property distribution," the payment of Julianne's mortgage is actually an ongoing maintenance obligation. Appellant's Op. Br. at 51. However, the plain language of the Agreement demonstrates that the ongoing payment of Julianne's mortgage by Kriss and the assignment of the home to her was a property and debt allocation, not a maintenance obligation.

As the commissioner noted, Julianne was awarded the marital home under section 5 of the Agreement titled "Property." CP at 352. Under section 6 titled "Community Debts and Liabilities," Kriss was assigned the "U.S. Bank Mortgage" on the home. CP at 355. There is no mention of the home or mortgage under the "Spousal Maintenance" section of the Agreement. CP at 357. Under the plain language of the Agreement, Kriss' obligation to pay Julianne's mortgage is a non-modifiable property and debt distribution. The judge did not err in denying Kriss' petition to modify his obligation to pay Julianne's mortgage.

The judge correctly concluded that the requirement that Kriss pay Julianne's mortgage is a non-modifiable property and debt distribution.

ATTORNEY FEES

Kriss argues the court erred in denying his request for attorney fees. Julianne responds that we should decline review of this issue because there is no order before this court on attorney fees. We agree with Julianne.

An award of attorney fees is within the trial court's discretion. *In re Marriage of Crosetto*, 82 Wn. App. 545, 554, 563, 918 P.2d 954 (1996). A party challenging the award or denial of attorney fees must show that the court used its discretion in an untenable or manifestly unreasonable manner. *In re Marriage of Knight*, 75 Wn. App. 721, 729, 880 P.2d 71 (1994). A party's intransigence can substantiate a trial court's award of attorney fees regardless of the factors enumerated in RCW 26.09.140[4] because attorney fees based on intransigence are an equitable remedy. *In re Marriage of Greenlee*, 65 Wn. App. 703, 708, 829 P.2d 1120 (1992).

Kriss requested an award of attorney fees for Julianne's alleged intransigence before the hearing on the competing motions to revise the commissioner's order.[5] Rather

---

[4] Under the statute, a trial court may order a party in a domestic relation action to pay reasonable attorney fees, but the court must generally balance the needs of the party requesting the fees against the opposing party's ability to pay. *Crosetto*, 82 Wn. App. at 563.

[5] On appeal, Kriss argues attorney fees should have been awarded for Julianne's bad faith, intransigence, violation of the Agreement, and under CR 11 and RCW 26.09.140. However, below, Kriss only requested fees for Julianne's intransigence and mentioned bad faith only in passing.

than decide Kriss' request, the judge ordered the "[m]otion for attorney fees is reserved." CP at 277. Thereafter, neither party requested the judge rule on the issue. We are unable to review Kriss' claimed error because the judge did not enter an order related to Kriss' request for attorney fees.

ATTORNEY FEES ON APPEAL

Kriss requests his attorney fees on appeal pursuant to RAP 18.1(b), RAP 14.2, RCW 26.09.140, CR 11, and on equitable grounds for Julianne's alleged bad faith and intransigence. Julianne responds that fees to Kriss should be denied and, instead, she should be awarded attorney fees under RCW 26.09.140. We deny both requests.

First, as an appellate court, we cannot impose CR 11 sanctions. *State v. A.W.*, 181 Wn. App. 400, 413, 326 P.3d 737 (2014). Furthermore, Kriss has not demonstrated he is entitled to fees for intransigence or bad faith on the part of Julianne. "Intransigence is a basis for awarding fees on appeal, separate from RCW 26.09.140 (financial need) or RAP 18.9 (frivolous appeals)." *Mattson v. Mattson*, 95 Wn. App. 592, 605, 976 P.2d 157 (1999). A party's intransigence is an equitable basis for awarding attorney fees. *In re Marriage of Chandola*, 180 Wn.2d 632, 656, 327 P.3d 644 (2014). A court may grant attorney fees for intransigence when a party engaged in "'foot-dragging' and 'obstruction' . . . or simply when one party made the trial unduly difficult and increased legal costs by his or her actions." *Id.* at 657 (quoting *In re Marriage of Katare*, 175 Wn.2d 23, 42, 283 P.3d 546 (2012)). "'Intransigence' may also be shown by 'litigious

17

behavior, bringing excessive motions, or discovery abuses.'" *In re Kelly and Moesslang*, 170 Wn. App. 722, 740, 287 P.3d 12 (2012) (quoting *In re Marriage of Wallace*, 111 Wn. App. 697, 710, 45 P.3d 1131 (2002)).

Kriss points out, and the record reflects, that Julianne was sanctioned in June 2023 for acting in bad faith during a discovery dispute. Moreover, prior to the hearing on Kriss' motion for modification, both parties failed to timely file their asset and liability worksheets. Kriss argues Julianne's failure to timely file her asset and liability worksheet was prejudicial because he (1) had to draft his hearing materials without Julianne's asset and liability worksheet, (2) incurred attorney fees, and (3) was required to continue making maintenance payments until the hearing date because Julianne requested and was granted a continuance in order to file her worksheet. However, the record demonstrates that the hearing was continued for multiple reasons, not just because Julianne's asset and liability worksheet was not yet filed (e.g., court could not access all of the documents prior to the hearing due to technical difficulties). Further, when discussing whether maintenance should be retroactively terminated, the judge noted:

> I know [Kriss's attorney] is arguing that there's been delays that were purposeful by [Julianne's] attorney. I'm not sure of that. I know she talked about not filing everything or then wanting the business tax returns. As an attorney, I would have wanted the business tax returns. I don't think I'm doing my due diligence if I don't have them. So, I don't think that was a delay. There was a significant amount of discovery. I think you guys did do depositions.

CP at 227.

Kriss has not demonstrated that he is entitled to an attorney fee award based on Julianne's intransigence. The sanctions levied against Julianne in 2023 resolved that issue, and the fact that she was sanctioned for bad faith does not support another fee award for Kriss. Moreover, although Julianne was untimely in filing her asset and liability worksheet, the record does not reflect that her tardiness was the sole reason for the continuance Kriss argues prejudiced him. Kriss is not entitled to his attorney fees on appeal for Julianne's bad faith or intransigence.

Finally, when attorney fees are allowed below, the prevailing party may recover those fees on appeal. *Aiken v. Aiken*, 187 Wn.2d 491, 506, 387 P.3d 680 (2017); *see* RAP 14.2 (costs). RCW 26.09.140 provides that the superior court "from time to time after considering the financial resources of both parties may order a party to pay a reasonable amount for the cost to the other party of maintaining or defending any proceeding under this chapter and for reasonable attorneys' fees or other professional fees in connection therewith." The statute also states that "[u]pon any appeal, the appellate court may, in its discretion, order a party to pay for the cost to the other party of maintaining the appeal and attorneys' fees in addition to statutory costs." RCW 26.09.140. This statute applies only to dissolution proceedings and "invest[s] appellate courts with discretion to order a party to pay fees and costs to the opposing party [after] consider[ation] of financial circumstances." *In re Marriage of Rideout*, 150 Wn.2d 337, 357, 77 P.3d 1174 (2003).

We decline an award to either party under RCW 26.09.140. Though Kriss was meritorious regarding spousal maintenance, his arguments regarding payment of Julianne's mortgage and attorney fees below were unsuccessful. Because both parties have partially prevailed in this appeal, we deny attorney fees under RCW 26.09.140 to both.

## CONCLUSION

We reverse the judge's order denying Kriss' petition to modify spousal maintenance and remand for a hearing on the petition. We affirm the judge's order denying Kriss' petition to modify the requirement that he pay Julianne's mortgage. We decline review of Kriss' claimed error related to attorney fees below and deny both parties their attorney fees on appeal.

A majority of the panel has determined this opinion will not be printed in the Washington Appellate Reports, but it will be filed for public record pursuant to RCW 2.06.040.

_____
Cooney, J.

WE CONCUR:


_____          _____
Fearing, J.                                              Lawrence-Berrey, C.J.